**John M. JACKSON, Plaintiff,**

v.

**AMERICAN CAN COMPANY, INC., Defendant.**

**No. K75–424 CA8.**

United States District Court, W. D. Michigan, S. D.

Feb. 8, 1980.

William J. Fisher, III, Grand Rapids, Mich., for plaintiff.

Peter Armstrong, Grand Rapids, Mich., Dewey, Ballatine, Bushby, Palmer & Wood, New York City, for defendant.

## OPINION AND ORDER

DOUGLAS W. HILLMAN, District Judge.

This is a diversity action brought by plaintiff John M. Jackson, a former employee of defendant American Can Company, to compel the Company to pay him the balance of monthly pension benefits allegedly due and wrongfully withheld from August 1, 1973, as well as future benefits and punitive damages.

The case is before this Court on defendant's motion to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(6), on the grounds that plaintiff's action is barred by statutes of limitation and laches, and thus fails to state a claim for which relief can be granted. Because matters outside the pleadings have been presented to and not excluded by the Court, the motion will be treated as one for summary judgment under Federal Rules of Civil Procedure 56.

The undisputed facts are as follows:

Plaintiff was employed by American Can as a research scientist for nearly 32 years before retiring in 1963 at the age of 55. At his retirement, he was manager of the Special Investigating Section of the Company's Barrington, Illinois, research lab, engaged in the development of metal cans and other containers. As an employee, he was covered by the American Can Retirement Plan for Salaried Employees. *See* Appendix A, Affidavit of Eugene C. Ecker. The Plan was established in 1959. Section IX of the Plan creates a trust fund consisting of contributions made by employees and contributions made by the Company on behalf of employees. Under the Plan, an employee may choose either retirement at age 65, entitling him to a "normal retirement benefit," or early retirement, entitling him to an "early retirement benefit," an amount equal to his normal retirement benefit reduced by $\frac{1}{3}$ of 1% for each month his early retirement precedes his normal retirement date. Sec. V. If he chooses early retirement, an employee can elect to postpone the receipt of monthly benefits until age 65, in which case he will receive the full "normal retirement benefit."

The Plan is administered by an Annuity Board. Section XI provides, in pertinent part:

The Annuity Board shall have the exclusive right to interpret the terms and provisions of the Plan and to determine any and all matters and questions arising thereunder or in connection with the administration thereof, including without limitation the right to remedy possible ambiguities, inconsistencies or omissions.

All interpretations, determinations and decisions of the Annuity Board in respect of any matter or question arising under the Plan shall be final, conclusive and binding for all purposes upon all Employees, Members, provisional payees and beneficiaries. The Annuity Board, from time to time, may establish rules for the administration of the Plan and the transaction of the Annuity Board's business.

Section XII provides, in pertinent part:

If the Annuity Board finds that any retired, disabled or former Member is engaged or employed in any occupation or in a business which in its opinion is in competition with American Can Company or any Subsidiary and after due notice such Member continues to be so engaged or employed, the Annuity Board may suspend or terminate any right or claim of any such Member or his provisional payee to or in respect of any retirement or other benefit under the Plan except to the extent that the same may be provided by such Member's own contributions under the Plan plus Credited Interest to the date of his retirement or termination of his employment and except benefits payable under the Contract; in exercising its discretion under this sentence, the Annuity Board shall not discriminate in favor of the group composed of Members who, during employment by the Company, were officers, shareholders, persons whose principal duties consisted in supervising the work of other employees, or highly compensated employees . . . ..

Plaintiff chose early retirement on August 1, 1963. He also elected to postpone receipt of the monthly pension benefits then due him under the Plan until he reached the age of 65 on August 1, 1973. Upon leaving American Can, he went to work for the Green Giant Company as its director of research. The Annuity Board learned of his new employment. It met on August 13, 1963, and determined that plaintiff's employment by the Green Giant Company was "in competition" with American Can, within the meaning of Section XII of the Plan. Plaintiff was informed that the

monthly benefits he would begin receiving in 1973 would be reduced by the amount in the trust fund attributable to contributions made by American Can on his behalf. This meant plaintiff's monthly benefits were reduced from $528.04 to $354.31.

Plaintiff continued to work for the Green Giant Company. In April, 1969, and August, 1973, plaintiff wrote American Can, asking that the Annuity Board reconsider its decision of 1963. The Company replied each time that the Board had reviewed its decision and that its decision was final. Plaintiff filed this action on September 3, 1975, two years and one month after defendant commenced paying the "reduced" pension benefits and approximately twelve years after defendant made the decision which plaintiff now disputes.

The only issue before the Court is when plaintiff's claims accrued. If they accrued in 1963, then plaintiff is time-barred by the applicable statutes of limitation. If they did not accrue until 1973, there is no time bar to this action.

Plaintiff's complaint alleges several different causes of action, including breach of contract and tortious conduct by American Can. Specifically, plaintiff alleges defendant wrongfully coerced him into retirement; failed to provide reasonable standards by which competition with American Can can be determined; wrongfully enforced the noncompetitive employment provision, and wrongfully refused to pay full benefits after August 1, 1973. Defendant argues the "wrongs" of which plaintiff complains all occurred in 1963, when he retired and the Board made its determination to reduce his benefits.

█ It is settled law that in diversity cases the District Court shall apply the law of the forum state. Although the law of another jurisdiction may control the substantive elements of a claim, Michigan's statute of limitations will be applied. *See Lewis v. Food Machinery & Chemical Corp., John Bean Division*, 245 F.Supp. 195 (W.D. Mich.1965). In Michigan, there is a six year statute of limitations for most breach of contract claims, M.C.L.A. § 600.5807(8), and

a three year period for most tort claims, M.C.L.A. § 600.5805(7). Most claims accrue "at the time the wrong upon which the claim is based was done regardless of the time when damage results." M.C.L.A. § 600.5827. Under these statutes, plaintiff's action, filed twelve years after his retirement and the Board's decision to reduce his benefits, would be time-barred.

The plaintiff argues, however, that there is no time bar here on several grounds. First, he argues that the Plan is an installment contract since it provides for monthly benefit payments. Sec. VI. As such, he claims his claim should be governed not by M.C.L.A. § 600.5827, *supra*, but by M.C.L.A. § 600.5836, which states:

> The claims on an installment contract accrue as each installment falls due.

If applicable, plaintiff's claims date from August 1, 1973.

█ Second, plaintiff argues that the doctrine of anticipatory repudiation applies here. Under this doctrine, if a party to a contract, prior to the time of his performance, unequivocally declares his intent not to perform, the innocent party has the option to either sue immediately for breach of contract or wait until the time of performance. Because American Can was not required to pay out his benefits until August 1, 1973, plaintiff maintains the Annuity Board's exercise of the non-competition clause of the Pension Plan agreement amounted to an anticipatory repudiation. As a consequence, he maintains he could simply wait until 1973 and the statute did not begin to run until then.

Plaintiff's defenses raise interesting questions of law and fact. The legislature did not provide a definition of "installment contract" in M.C.L.A. § 600.5836. The Committee Comment to that section says only that the statute restates the law of *Staffon v. Lyon*, 110 Mich. 260, 68 N.W. 151 (1896) and *Collateral Liq., Inc. v. Renshaw*, 301 Mich. 437, 3 N.W.2d 834 (1942), which involved payments to a materialman on a construction contract and a promissory note, respectively. It is unclear, however,

what other kinds of contracts Michigan courts will deem to be installment contracts under the statute. It can be argued, for example, that the Pension Plan here is not an installment contract because it required more of American Can than merely monthly payments. Defendant was required to make contributions to the trust fund on behalf of employees, to establish the Annuity Board and administer the fund in a responsible manner, and to make payments when due under the terms of the Plan. It can be said that the terms providing for monthly benefit payments, far from defining the contract, merely described a mechanism for fulfilling one of American Can's obligations.

Furthermore, close examination of plaintiff's pleadings suggests he bases his claim on wrongs allegedly done in 1963. It was then, upon retirement and completion of his performance under the Plan, that he acquired a present, vested right to benefits. 9 *Williston on Contracts* (3d. Ed.), § 1019 at 224. He was then entitled to monthly payment of his benefit, comprised of both his paid-in contributions and those of American Can. His election to defer performance by American Can did not affect this present right to future benefits from the joint trust fund, but affected only the sum value of each payment to be eventually made. Plaintiff is not complaining merely of a reduction in the amount of each monthly benefit paid him, but rather of the entire elimination of a particular source for that benefit, namely, American Can's contributions, to which he had a right upon retirement. The elimination of that source is directly traceable to the decision of the Board on August 13, 1963.

Despite the appeal of this analysis, the Pension Plan may qualify as an installment contract, under which claims do not accrue until each installment falls due. Plaintiff's brief offers the very broad definition of "installment contract" from *Corbin on Contracts*, § 687 at 645:

> An installment contract is one in which the agreed performance of at least one of the parties is to be rendered, not as a

whole at one time and place, but piecemeal at different times or different places.

Moreover, commentators and courts have broadly characterized as installment contracts a wide variety of contracts calling for the payment of money in installments, including judgments, alimony, disability payments, and debts. *See, e.g.,* 4 *Corbin on Contracts,* § 949; 17A *C.J.S.* Contracts § 331 *et seq.*

■ Most important, it remains unclear from the terms of the Pension Plan agreement and the circumstances surrounding its application whether a breach could occur, and a cause of action arise, upon the Board's determination in 1963 or whether more was required. Although plaintiff surely had vested, present rights upon his retirement, the Board's announcement in 1963 may have amounted only to a declaration of present intent to exercise a condition subsequent by not paying him benefits attributable to American Can's contributions, and not a breach of a promise under the contract. The alleged breach may not have occurred until defendant failed to perform by paying him less than full benefits. It is impossible for the court to tell from the factual record before it precisely what effect the decision by the Board had. Was merely an accounting adjustment made in the projected sum to be paid plaintiff, or were funds then allotted to a separate account in his name removed? Did plaintiff have a present right to begin payments upon demand before 1973, just as he had originally elected to postpone payments? What appeal procedures existed for challenging the Board's determination? These questions, though not exhaustive, are relevant to determining when plaintiff's cause of action arose. Summary judgment is inappropriate where the facts are inadequate. 10 Wright & Miller, *Fed.Prac. and Proc.,* § 2725 at 501–4.

■ Support for the view that plaintiff's cause of action did not arise until the payments were due to be paid is found in the doctrine of anticipatory repudiation. The standard rule is that the doctrine will

only apply to bilateral contracts. Where the contract is unilateral, or where one party has completed performance, and only money remains to be paid at some future date, no cause of action will arise until the date of performance. 11 *Williston on Contracts*, § 1326 at 146; 17A *C.J.S.* Contracts § 472(2)(b) at p. 663. It is always possible for the repudiating party to revoke his repudiation and to perform as promised. Therefore, on the facts of the instant case, the doctrine of anticipatory repudiation, far from granting plaintiff the option either to sue immediately or wait until the time of performance, required him to wait until the time of performance because only a promise to pay money remained to be performed. No claim accrued until then.

Defendant also raises a defense of laches. Laches is available in an action for equitable relief where the plaintiff's inexcusable delay in pursuing his claim has prejudiced the defendant's rights to the extent it would be inequitable to permit the action. At issue here are benefits to be paid under the Pension Plan during the course of plaintiff's lifetime. Because the relief sought is both retroactive and prospective and is, therefore, in part equitable, laches is available. As noted in the discussion above, however, a legitimate issue exists as to when the alleged breach occurred and when the claim accrued. It was not unreasonable for plaintiff to wait until the time of performance and to make good faith demands on the Board for reconsideration of its decision in the meantime. There is no indication here that plaintiff intentionally or negligently slept on his rights. Moreover, the court does not believe from the affidavits and other evidence submitted to it that defendant is so prejudiced in its defense as to outweigh the interest of the plaintiff in pressing his claim within a reasonable time after defendant's performance. The court holds that defendant has failed to show that laches is appropriate here.

Upon a careful consideration of the record and pleadings, and construing all facts in a light most favorable to the opposing party, the court holds that defendant's

motion to dismiss with respect to plaintiff's claim that defendant wrongfully coerced him into retirement is granted on the ground that it is barred by the statute of limitations, but that defendant's motion to dismiss and for summary judgment with respect to plaintiff's other claims is denied.

IT IS SO ORDERED.