Markman, J.
(concurring). I concur with the majority’s opinion with regard to all issues in this case. However, I write separately to further discuss the statute of limitations issue in section iv of the majority opinion and to express reservations regarding the outcome of this issue, although I ultimately join in the affirmance in this case.
As a preliminary matter, I feel that a more complete exposition of the facts regarding the contract in this case and the breaches of the contract is necessary to fully understand the statute of limitations issue. The trial court determined, and this Court affirms, that Joe Tucker orally contracted in 1957 with Julien VanMaele of defendant corporation to seek customers for defendant in return for a five percent commission on all sales Tucker procured for defendant.[1] Further, the contract was unusual in that it was “for the life of the part,” which meant that once Tucker made an initial sale of a part to a customer, he received a commission on all future sales or reorders of that part, even if his position with defendant was *576 terminated for any reason.[2] The commissions were paid monthly, upon defendant’s invoicing its customers for work produced that month. In 1986, defendant unilaterally reduced Tucker’s commission on a Rockwell International project from five percent to three percent.[3] However, the rest of plaintiff’s commissions continued as under the original contract. From 1988 through 1990, defendant unilaterally reduced certain commissions by different percentages or completely eliminated Tucker’s representation on at least five different accounts, while leaving Tucker’s commissions on the remaining accounts at the rate agreed to in 1957. Thus, regardless of whether Tucker’s commission payments are treated as installment payments as in the majority opinion, there was clearly more than one breach of the contract in this case. This is contrary to defendant’s argument that the six-year contract period of limitation completely bars plaintiff’s claim because the original, 1986 breach of the contract was more than six years before plaintiff filed suit in 1993. Instead, while it appears undisputed that damages for payments due more than six years before this suit was filed are barred by the statute of limitations, damages from the 1988, 1989, and 1990 breaches would not be barred by the statute of limitations even if the contract in this case were not treated as an installment contract.
With these facts established, I next address the pivotal question: When did plaintiff’s claim accrue? Because, as the majority correctly points out, a breach of contract claim accrues when the promisor *577 fails to perform under the contract, namely, when the breach occurs, Cordova Chemical Co v Dep’t of Natural Resources, 212 Mich App 144, 153; 536 NW2d 860 (1995), and “the period of limitations runs from the time the claim accrues,” MCL 600.5827; MSA 27A.5827, it is necessary to determine whether plaintiffs claim accrued when defendant unilaterally changed the contract in 1986, 1988, 1989, and 1990, or accrued each month as plaintiffs commission payment came due. The majority concludes that claims for payments due under the contract here are analogous to claims for payments due under an installment contract, claims for alimony payments, or claims for pension payments. However, I believe that a more detailed examination of the issue is in order.
Installment contract claims accrue as each installment falls due, MCL 600.5836; MSA 27A.5836, so that the statutory period of limitation runs separately with respect to each installment as it becomes due. Sparta State Bank v Covell, 197 Mich App 584, 587; 495 NW2d 817 (1992). Unfortunately, § 5836 does not provide a definition of “installment contract.” 3A Corbin, Contracts, § 687, p 245, however, offers a broad definition of “installment contract”:
An installment contract is one in which the agreed performance of at least one of the parties is to be rendered, not as a whole at one time and place, but piecemeal at different times or different places.
See Jackson v American Can Co, Inc, 485 F Supp 370, 374 (WD Mich, 1980). The Legislature also determined that alimony payments accrue as each payment falls due, as with an installment contract, MCL 600.5837; MSA 27A.5837. In addition, this Court has *578 held that pension benefits are similar to installment contracts so that the limitation period runs from the date each installment is due. Harris v City of Allen Park, 193 Mich App 103, 107; 483 NW2d 434 (1992); see also Adams v Detroit, 232 Mich App 701; _ NW2d _ (1998). However, these pension cases merely state in conclusory fashion that pensions are like installment contracts, without any analysis of the connection with, or of the holding’s effect on, statute of limitations policy. Further, in Petovello v Murray, 139 Mich App 639; 362 NW2d 857 (1984), this Court held that a commission contract in which the plaintiff agreed to provide a lessee for the defendant’s property, and the defendant agreed to pay the plaintiff $150 a month commission for the term of the lease, was an installment contract, although again without much elucidation. It appears in Petovello that this Court relied in part on the doctrine of anticipatory repudiation to so hold, because where there exists only a unilateral obligation to pay money in the future because the other party has already completed performance, no cause of action arises until the date of performance and a party cannot sue to collect the entire amount before the time each payment is due. Id. at 645-646; Brauer v Hobbs, 151 Mich App 769, 776; 391 NW2d 482 (1986), citing Jackson, supra at 374-375.
Thus, current law does appear to point in the majority’s direction, although it requires several leaps of logic, because there is little analysis in these cases to explain the conclusions that different types of contracts are akin to installment contracts. Indeed, I believe that the contract at issue here can be considered analogous to a pension, because in each case *579 there is an aggregate amount of money due at some point, even though the contractor/pensioner is not entitled to all of it at any one time. Each must wait until the conditions precedent to collecting the money are fulfilled each month in order to become entitled to collect each payment, even though their obligation under the contract has already been fulfilled. The analogy is imperfect, because plaintiff here must not only survive to claim each payment like the pensioner with his vested pension, but plaintiff is also dependent on further orders on its accounts to entitle it to commissions. However, I believe the analogy may be close enough so that we may treat the current contract like a pension contract, which has already been held analogous to an installment contract. In addition, in Petovello, supra at 644-645, the condition precedent to the commission payment of the payment of rent by a third party did not preclude this Court from finding that the contract was an installment contract. The facts of this case also show that, while plaintiff had performed its duty under the contract of obtaining clients for defendant, defendant had a continuing, unilateral duty to pay plaintiff the money due plaintiff each month. Thus, the doctrine of anticipatory repudiation would seem to mandate that no cause of action would arise until payments were due, because it was possible for defendant to revoke its repudiation and satisfy its obligation under the contract until such time. Brauer, supra at 776, citing Jackson, supra at 375.
While accepting the above analysis, I remain troubled by the results in this case. In my judgment, the doctrine of continuing breaches may be extended too far in this case, potentially undermining the policy *580 rationale envisioned by the Legislature in enacting a statute of limitations. The Supreme Court has stated:
Limitations periods created by statute are grounded in a number of worthy policy considerations. They encourage the prompt recovery of damages; they penalize plaintiffs who have not been industrious in pursuing their claims; they “afford security against stale demands when the circumstances would be unfavorable to a just examination and decision”; they relieve defendants of the prolonged fear of litigation; they prevent fraudulent claims from being asserted; and they “ ‘remedy ... the general inconvenience resulting from delay in the assertion of a legal right which it is practicable to assert.’ ” [Lothian v Detroit, 414 Mich 160, 166-167; 324 NW2d 9 (1982) (citations omitted).]
With these policies in mind, it appears that the critical points in the instant sequence of events were at the time of each affirmative decision by defendant to reduce or eliminate plaintiffs commissions on individual accounts, in 1986, 1988, 1989, and 1990. The actions of defendant could reasonably be viewed as a single breaching of the contract at the time of these affirmative decisions. Thereafter, defendant paid plaintiff what plaintiff was owed in full under the altered contract. At the moment the commissions were initially reduced, plaintiff was clearly put on notice that the status quo was being changed and that its rights under the contract were being altered. It seems to me that these are the points at which plaintiff knew that it could file a contract action against defendant, yet it waited beyond the statutory limitation period to do so.
Under the installment contract analogy, plaintiff is allowed, even perhaps required, to sit on its right to sue, even though it was already fully apprised that *581 defendant intended a permanent change of contract. Thus, it appears that plaintiff could have continued to hold defendant captive to a potential suit indefinitely; there could never be finality on the propriety of defendant’s decision to alter plaintiff’s commission. In this situation, there would be no prompt recovery of damages and the penalty for a plaintiff who was not diligent in pursuing claims would be severely limited—plaintiff would merely be limited to damages from the last six years rather than having its claims completely barred. See Lothian, supra at 166-167. Perhaps most significant, the protection against stale demands offered by a statute of limitations would be largely vitiated. Id. Thus, it appears that likening the contract in this case to an installment contract erodes the purposes behind the enactment of statutes of limitations.
Although I am troubled by the results in this case, which allow plaintiff to take no legal action indefinitely yet still maintain its right to sue on the contract, I recognize that the law appears to weigh in favor of the majority’s position in this case. In the absence of any alternative case law based on the policy of the statute of limitations, or otherwise finding that a commission contract of the sort involved in this case is not akin to an installment contract, I reluctantly concur with the majority’s position on this issue. Thus, I join the majority’s opinion on all issues, including the statute of limitations issue, finding that the commission contract here is analogous to an installment contract and therefore that the limitation period runs from the due date of each monthly payment.

 Tucker testified that there were two exceptions to the commission agreement: (1) a large contract for Motor Wheel involving multiple small parts for which Tucker agreed to accept a 2-1/2 percent commission (the Motor Wheel hub job), with five percent to be paid on all other Motor Wheel work; (2) Tucker would receive a ten percent commission for jobs for which the customer supplied the necessary equipment without charge to defendant, because defendant would not have to purchase the equipment.

 See section vni of the majority opinion.

 Although defendant stated that this reduction was temporary, plaintiffs commission on this job was never increased.