595 N.W.2d 176 (1999)
235 Mich. App. 550
H.J. TUCKER & ASSOCIATES, INC., a Michigan corporation, Plaintiff-Appellee,
v.
ALLIED CHUCKER AND ENGINEERING COMPANY, a Michigan corporation, Defendant-Appellant.
Docket No. 195921.
Court of Appeals of Michigan.
Submitted September 1, 1998, at Lansing.
Decided March 26, 1999, at 9:00 a.m.
Released for Publication June 22, 1999.
*179 Howard & Howard Attorneys (by James H. Geary, Jeffrey G. Raphelson, Donald F. Tucker, and James C. Wickens), Bloomfield Hills, for the plaintiff.
Marcoux, Allen, Abbott, Schomer & Bower, P.C. (by John H. Schomer and Richard C. Lindsey, Jr.), Jackson, for the defendant.
Before: MacKENZIE, P.J., and BANDSTRA and MARKMAN, JJ. *177
*178 BANDSTRA, J.
Defendant, Allied Chucker and Engineering Company, appeals as of right the judgment entered against it following a nine-day bench trial for the recovery of unpaid sales commissions owing to plaintiff, H.J. Tucker & Associates, Inc. In this case, we are asked to decide, in addition to other issues, an issue of first impression involving whether M.C.L. § 600.2961; MSA 27A.2961 of the Revised Judicature Act (RJA), which grants treble damages for an intentional failure to pay commissions to a sales representative and authorizes courts to award reasonable attorney fees and court costs to a plaintiff who prevails in an action to recover the commissions due, violates the Title-Object Clause of the Michigan Constitution. Const 1963, art 4, § 24. We conclude that it does not. We affirm the trial court's judgment in favor of plaintiff.
This cases arises from plaintiff's claim that it was entitled to unpaid sales commissions from defendant. In 1957, Harold Joseph Tucker (Joe Tucker[1]) of plaintiff corporation orally contracted with Julien VanMaele of defendant corporation to serve as a manufacturer's representative for defendant to seek tooling work for defendant from other businesses. In return for his services as a manufacturing representative, Joe Tucker was to be paid a commission by defendant for the sales or customers he procured for defendant. Although the exact terms of the oral commission agreement subsequently were disputed, it is generally undisputed that Julien VanMaele, on behalf of defendant, agreed to pay Joe Tucker commissions of five percent of the labor that defendant charged its customers for work that Joe Tucker obtained for defendant.
Over the years, the parties' relationship grew mutually financially beneficial, with plaintiff procuring approximately ninety percent of defendant's sales and defendant providing approximately ninety percent of plaintiff's revenues. There appears to have been no disputes regarding commission payments to plaintiff during Julien *180 VanMaele's tenure with defendant. However, soon after VanMaele died in 1986, defendant, through its then general manager, William Schomer,[2] sought to reduce plaintiff's commissions. Between 1986 and 1989, Schomer reduced plaintiff's commissions on various projects, and, on some projects, Schomer completely eliminated the commission. During this time, Joe Tucker verbally objected to the reduction in the commissions. In April 1990, Joe Tucker wrote defendant, objecting to the reduction of plaintiff's commissions and requesting reinstatement of the commissions. However, the commission reductions continued. In February 1993, Joe Tucker again wrote a letter to defendant objecting to the reduction in commissions and requesting reinstatement of the commissions. Defendant denied the request.
In February 1993, plaintiff sued defendant to recover the full amount of the commissions owed plaintiff since 1986. In its complaint, plaintiff alleged breach of contract, fraudulent misrepresentation, innocent misrepresentation, detrimental reliance, quantum meruit, unjust enrichment, and breach of fiduciary duty. Plaintiff later added an additional count for damages under the sales commission act, M.C.L. § 600.2961; MSA 27A.2961, which allows for an additional award of two times the amount of the commissions due, not to exceed $100,000, and for payment of costs and attorney fees. Following a nine-day bench trial, the trial court found in favor of plaintiff. The trial court awarded plaintiff commissions, statutory damages, attorney fees, court costs pursuant to M.C.L. § 600.2961; MSA 27A.2961, expenses, expert witness fees, and statutory interest.

I
Defendant challenges the constitutionality of M.C.L. § 600.2961; MSA 27A.2961, the provision of the RJA under which plaintiff sought attorney fees, court costs, and treble damages for defendant's failure to pay commissions.[3] Defendant claims that the trial court erred in determining that § 2961 does not violate the Title-Object Clause of the Michigan Constitution. Const. 1963, art. 4, § 24. We disagree. In reviewing this issue de novo, we begin with the presumption that the legislation is constitutional. Ray Twp. v. B & BS Gun Club, 226 Mich.App. 724, 728, 575 N.W.2d 63 (1997).
The Title-Object Clause of the Michigan Constitution states that "[n]o law shall embrace more than one object, which shall be expressed in its title." Const. 1963, art. 4, § 24. There are three ways to challenge a statute on the basis of the Title-Object Clause: (1) a multiple-object challenge, (2) a title-body challenge, and (3) a change of purpose challenge. Ray Twp., supra at 728, 575 N.W.2d 63, citing People v. Kevorkian, 447 Mich. 436, 453, 527 N.W.2d 714 (1994) (opinion by Cavanagh, C.J., joined by Brickley and Griffin, JJ.). In the present case, defendant raises a multiple-object challenge and a title-body challenge.
With respect to the multiple-object challenge, we are not persuaded by defendant's argument that the RJA embraces more than one object in that the object of the RJA deals with procedural improvements but § 2961 involves substantive rights. "The `object' of a law is its general purpose or aim." Ray Twp., supra at 731, 575 N.W.2d 63. The body of the law, and not just its title, must be examined to determine whether the act embraces more than one object. Id. "The *181 purpose of the single-object rule is to avoid bringing into one bill diverse subjects that have no necessary connection." Mooahesh v. Dep't of Treasury, 195 Mich.App. 551, 564, 492 N.W.2d 246 (1992).
The title of the RJA states:
An act to revise and consolidate the statutes relating to the organization and jurisdiction of the courts of this state; the powers and duties of such courts, and of the judges and other officers thereof; the forms and attributes of civil claims and actions; the time within which civil actions and proceedings may be brought in said courts; pleading, evidence, practice and procedure in civil and criminal actions and proceedings in said courts; to provide remedies and penalties for the violation of certain provisions of this act; and to repeal all acts and parts of acts inconsistent with, or contravening any of the provisions of this act.
Although we agree with defendant that § 2961 involves substantive rights, we disagree that the object of the RJA involves procedure only. In reviewing the title of the RJA, we find that the general object or purpose of the RJA is the revision and consolidation of statutes regarding the state's courts. As explained in Kingsley Associates, Inc. v. Moll PlastiCrafters, Inc., 65 F.3d 498, 508 (C.A.6, 1995), the title of the RJA is not limited to procedure, but also encompasses substantive rights because the title refers "to the organization of the courts, the powers and duties of such courts, and the forms and attributes of civil claims and actions, all of which may refer to substantive rights."[4] Further, the title specifically refers to the RJA's provision of "remedies and penalties" for and against litigants in the courts. We agree with the conclusion reached in Kingsley that § 2961 does not violate the Title-Object Clause of the Michigan Constitution.[5] Although defendant argues to the contrary, we are not convinced that the aims of the RJA and § 2961 are so diverse in their subjects that they "have no necessary connection." Mooahesh, supra at 564, 492 N.W.2d 246. Section 2961 furthers the general purpose of the act without violating the one-object limitation. Id.
With regard to defendant's title-body challenge, defendant argues that § 2961 exceeds the scope of the title because the RJA's object deals only with procedure and § 2961 creates substantive rights. Because this argument is based on a premise we rejected in considering defendant's multiple-object challenge, we reject defendant's title-body challenge for similar reasons.
"The title of an act must express the general purpose or object of the act." Ray Twp., supra at 728, 575 N.W.2d 63. However, the title of an act need not be an index to all the provisions of the act. Id. The test is whether the title gives fair notice to the legislators and the public of the challenged provision. Id. at 728-729, 575 N.W.2d 63. "The notice aspect is violated where the subjects are so diverse in nature that they have no necessary connection." Mooahesh, supra at 569, 492 N.W.2d 246.
As previously stated, the title of the RJA is not merely limited to procedure, but also refers to substantive rights. The RJA's title encompasses the general organization and powers of the courts within *182 the state. Only this general object of the RJA, and not all the details and incidents of a particular statute, need be indicated in the title. Id. at 566, 492 N.W.2d 246. After reviewing the scope of the title and the rights created by the provisions of § 2961, we conclude that the title of the RJA gives fair notice of the provisions of § 2961. As stated in Kingsley, supra at 508, "[t]he RJA is a multivolume compilation of statutes enacted at various times on a number of subjects." The title of the RJA specifically refers to "the powers and duties of [the] courts" and "the forms and attributes of civil claims and actions." "Section 600.2961 merely authorizes the courts to grant treble damages for intentional failure to pay commissions." Kingsley, supra at 508. Thus, the rights created by § 2961 are within the scope of the title of the RJA, and the subjects are not so diverse in nature that they "have no necessary connection." Mooahesh, supra at 569, 492 N.W.2d 246.
In sum, giving due regard to the presumption in favor of constitutionality, Ray Twp., supra at 728, 575 N.W.2d 63, considering the fact that the RJA is remedial in character and is to be liberally construed, as specifically provided by the Legislature, M.C.L. § 600.102; MSA 27A.102, and considering our agreement with the holding and analysis of the Sixth Circuit Court of Appeals on this issue, we conclude that the trial court did not err in determining that § 2961 does not violate the Title-Object Clause of the Michigan Constitution.

II
Defendant argues that the trial court erred in awarding plaintiff attorney fees under M.C.L. § 600.2961; MSA 27A.2961. M.C.L. § 600.2961(6); MSA 27A.2961(6) provides that "[i]f a sales representative brings a cause of action pursuant to this section, the court shall award to the prevailing party reasonable attorney fees and court costs." "Prevailing party" is defined in subsection 2961(1)(c) as "a party who wins on all the allegations of the complaint or on all of the responses to the complaint." Because plaintiff pleaded alternative theories of liability and did not prevail on all of them, defendant argues that plaintiff was not a prevailing party under this definition. We disagree.
In Van Zanten v. H Vander Laan Co., Inc., 200 Mich.App. 139, 141, 503 N.W.2d 713 (1993), the plaintiff pleaded three different damage theories. Because each theory sought to recover for the same injury and recovery under any theory would have allowed recovery of the full measure of her damages, our Court held that it was necessary for the plaintiff to "prevail only on one theory in order to be considered a prevailing party." Id. Further, plaintiff was entitled to plead alternative claims pursuant to MCR 2.111(A)(2). See, also, Abel v. Eli Lilly & Co., 418 Mich. 311, 335, 343 N.W.2d 164 (1984). Defendant's construction of the statute is too narrow and would defeat the purpose of MCR 2.111(A)(2) to allow inconsistent claims or alternative theories to be pleaded for a single cause of action.

III
Defendant also asserts that the trial court improperly awarded prejudgment interest to plaintiff pursuant to M.C.L. § 600.6013; MSA 27A.6013. Specifically, defendant asserts that prejudgment interest on the 1994 commissions should have been awarded from the date those commissions became due and owing to plaintiff in 1994 and not from when the complaint was filed in 1993. We disagree.
MCL 600.6013; MSA 27A.6013 entitles a prevailing party in a civil action to prejudgment interest from the date of filing the complaint to the entry of the judgment. The purpose of prejudgment interest is to "compensate the prevailing party for expenses incurred in bringing actions for money damages and for any delay in receiving such damages." Phinney v. Perlmutter, 222 Mich.App. 513, 541, 564 N.W.2d 532 (1997). "[T]he prejudgment interest statute is remedial in nature *183 and is to be construed liberally in favor of the plaintiff." Id.
This Court recently held that, except for future damages resulting from a personal bodily injury, a plaintiff is entitled to prejudgment interest on the entire money judgment, including future damages, from the date of the filing of the complaint. Paulitch v. Detroit Edison Co., 208 Mich.App. 656, 661-663, 528 N.W.2d 200 (1995). On the basis of this Court's decision in Paulitch and construing the prejudgment interest statute liberally in favor of plaintiff, we conclude that the trial court did not err in awarding interest on the entire judgment, including that portion of damages that reflected commissions due after the complaint was filed but before entry of judgment, from the date that the original complaint was filed.

IV
Defendant next argues that the trial court erred in determining that plaintiff's entire breach of contract action was not barred by the statute of limitations and that plaintiff was entitled to recover its unpaid commissions for up to six years before the filing of its complaint. We disagree. In this case, plaintiff's breach of contract claim is subject to the six-year period of limitation set forth in M.C.L. § 600.5807(8); MSA 27A.5807(8). A claim of breach of contract accrues when the promisor fails to perform under the contract. Cordova Chemical Co. v. Dep't of Natural Resources, 212 Mich.App. 144, 153, 536 N.W.2d 860 (1995).
Although defendant asserts that plaintiff's claim accrued in 1986, more than six years before plaintiff filed its complaint, and thus the entire breach of contract action was time-barred, we conclude that claims for payments due under the contract between the parties are analogous to claims for payments under an installment contract, M.C.L. § 600.5836; MSA 27A.5836, claims for alimony payments, M.C.L. § 600.5837; MSA 27A.5837, or claims for monthly pension payments, Harris v. City of Allen Park, 193 Mich.App. 103, 107, 483 N.W.2d 434 (1992), all of which accrue as each payment becomes due. In the present case, the commissions earned by plaintiff were separately computed, were to be paid monthly, and were of a periodic nature. "[E]very periodic payment made that is alleged to be less than the amount due ... constitutes a continuing breach of contract and the limitation period runs from the due date of each payment." Id. The trial court correctly granted remittitur to defendant for the $19,137.38 in unpaid commissions that defendant failed to pay that occurred more than six years before the time that plaintiff filed its complaint in September 1993 because these claims were barred by subsection 5807(8). However, the trial court correctly determined that plaintiff was entitled to recover its unpaid monthly commissions that fell within the six-year limitation period. Harris, supra.

V
Defendant argues that the trial court erred in finding that plaintiff did not agree to modification of the representation agreement and that plaintiff had not waived its contract rights. We disagree. This Court reviews findings of fact for clear error. MCR 2.613(C); Arco Industries Corp. v. American Motorists Ins. Co., 448 Mich. 395, 410, 531 N.W.2d 168 (1995).
The evidence supports the trial court's finding that plaintiff did not agree to the reductions in its commissions. In the trial court's verdict, it stated that it believed Joe Tucker's testimony that he did not agree to the modification of the agreement. This Court gives special deference to the trial court's findings when they are based on its assessment of the witnesses' credibility. Id. Further, in addition to Tucker's testimony, William Schomer, defendant's general manager since 1985 and president since 1990, testified that Tucker objected to the reduction in commissions and that the reductions were unilaterally made by defendant without plaintiff's agreement. *184 As in Militzer v. Kal-Die Casting Corp., 41 Mich.App. 492, 493-495, 200 N.W.2d 323 (1972), after the plaintiff in the present case had obtained substantial orders and accounts for the defendant and after much of plaintiff's time and energy had already been expended, defendant decided to make a downward "adjustment" to the plaintiff's five-percent commission. This Court stated in Militzer, at 495, 200 N.W.2d 323, that "[i]f defendant had desired to limit plaintiff's commission in terms of time or amount[,] it could have done so, preferably in writing, in the original agreement." As in Militzer, at 496, 200 N.W.2d 323, defendant in the present case should not be permitted to deny plaintiff the compensation agreed on.
Plaintiff also did not waive its contract rights. This Court has defined "waiver" as follows:
"To constitute a waiver, there must be an existing right, benefit, or advantage, knowledge, actual or constructive, of the existence of such right, benefit, or advantage, and an actual intention to relinquish it, or such conduct as warrants an inference of relinquishment....

* * *
"A waiver may be shown by proof of express language of agreement or inferably established by such declaration, act, and conduct of the party against whom it is claimed as are inconsistent with a purpose to exact strict performance." [Fitzgerald v. Hubert Herman, Inc., 23 Mich.App. 716, 718-719, 179 N.W.2d 252 (1970) (citation omitted).]
In the present case, plaintiff's conduct did not demonstrate an "actual intention to relinquish" its right to the five percent commissions that it had been paid before October 1986, nor did plaintiff's conduct show "proof of an express language of agreement." Id. The evidence showed that Joe Tucker immediately and consistently made objections to defendant regarding the reduction in commissions and that he formalized his objections in letters to defendant in April 1990 and February 1993.
Further, with respect to defendant's assertion that the statements made during the trial by Donald Tucker, plaintiff's legal counsel and one of its directors, constituted admissions that plaintiff did not object to the reductions in its commissions before 1990, we conclude that defendant is taking the statements out of context. During the trial, defense counsel questioned Donald Tucker about plaintiff's prior litigation, filed in 1989, regarding a commission dispute with Demmer Corporation. When asked by defense counsel whether "this was the first time" that plaintiff had a commission dispute with a principal, Donald Tucker responded that it was the first time that he had represented plaintiff "in a litigation" with regard to a commission dispute. Defense counsel then questioned: "Is it the first time [plaintiff] had a problem with commissions?" Donald Tucker responded: "I believe so, yes." On the basis of this colloquy, the trial court inferred that Donald Tucker meant that the prior commission dispute with Demmer Corporation was the first commission problem that plaintiff had litigated. The statements did not corroborate defendant's position that plaintiff did not dispute its commissions with defendant before 1990. The trial court's interpretation of the statements was reasonable and not clearly erroneous. Arco, supra.

VI
Next, defendant asserts that the trial court erred in its application of Wild v. Wild, 266 Mich. 570, 254 N.W. 208 (1934), to the present case. We disagree. In Wild, at 572, 254 N.W. 208, the Supreme Court held that testimony regarding the admissions of deceased individuals should be regarded with caution and is of little value without corroboration. Defendant asserts that the trial court did not heed this caution in accepting Joe Tucker's testimony regarding the terms of the *185 agreement he made with Julien VanMaele in 1957.
However, contrary to defendant's assertion,[6] Joe Tucker's version of his agreement with VanMaele was corroborated by disinterested witnesses. Merri Lee Taylor,[7] defendant's former office manager from 1961 to 1987, was responsible for calculating plaintiff's commissions and preparing the commission checks. Taylor corroborated Tucker's testimony regarding the method and amount of the commission and the accounts on which plaintiff received commission. Peter Christou, who was married to VanMaele's daughter and who also formerly worked for defendant, similarly corroborated Tucker's testimony regarding the terms of the agreement and the accounts for which plaintiff was responsible. In addition, Bill Munday, a manufacturer's representative for defendant since 1963, testified about his verbal agreement with VanMaele, which included terms similar to those alleged by plaintiff.
Further, the terms of an oral agreement may be demonstrated by the course of dealing and performance between contracting parties. State Bank of Standish v. Curry, 442 Mich. 76, 86, 500 N.W.2d 104 (1993). Defendant's own documents verified Joe Tucker's testimony regarding the manner in which his commissions were calculated and the accounts for which he received commissions. Defendant's documents revealed that before defendant reduced plaintiff's commissions in 1986, the commission payments to plaintiff were consistent with the terms of the agreement as related in testimony by Joe Tucker.
In accord with Wild, supra, the trial court in the present case was mindful of the cautions to be exercised when one of the parties to an agreement is deceased. Because there was ample evidence presented by disinterested witnesses and by the course of conduct between plaintiff and defendant regarding the payment of commissions, all of which corroborated Joe Tucker's version of the agreement with Julien VanMaele, we conclude that the trial court did not err in its application of Wild and in accepting Joe Tucker's version of the terms of the sales representation agreement.

VII
Defendant also argues that the trial court erred in relying on Reed v. Kurdziel, 352 Mich. 287, 89 N.W.2d 479 (1958), without making a finding that plaintiff was the procuring cause of customers, as opposed to sales or orders, in this case. We disagree. As defendant suggests, it is true that in Reed there was no dispute that the plaintiff was entitled to a commission for all customers, or original sales, procured. However, in Reed, as in the present case, it was disputed whether the plaintiff was entitled to commissions for all sales and reorders of sales, i.e., commissions for as long as the job ran. Thus, Reed is not materially distinguishable from the present case. See Kingsley Associates, Inc. v. Del-Met, Inc., 918 F.2d 1277, 1282 (C.A.6, 1990). The trial court did not err in relying on Reed for guidance in this case without making a finding that plaintiff was the procuring cause of customers for defendant.

VIII
Defendant asserts that the trial court clearly erred in finding that plaintiff was entitled to posttermination commissions *186 for all sales it procured for defendant. We disagree. The court's finding was consistent with plaintiff's pleadings, the evidence presented, and the law in Michigan. Contrary to defendant's assertion, plaintiff's amended complaint alleged that plaintiff was obligated under its agreement with defendant "to procure new customers and orders" for defendant. Even assuming, as argued by defendant, that plaintiff's statements and pleadings are inconsistent with regard to its obligations to procure customers, the fact still remains that defendant paid plaintiff commissions for years on sales plaintiff procured from Rockwell Corporation and Clark Equipment, which payments to plaintiff belies defendant's claim that plaintiff was not entitled to a commission on these accounts because plaintiff had not procured these customers. As previously stated, the terms of an oral agreement may be demonstrated by the course of dealing and performance between contracting parties. State Bank of Standish, supra.
Further, although Melvin Schalhamer, defendant's president from 1986 to 1990 and a subsequent chairman of defendant's board of directors, may have testified that defendant's sales representatives were not entitled to posttermination commissions, the court found Joe Tucker to be the more credible witness. This Court should defer to the trial court's assessment of credibility in this regard. Reed, supra at 295, 89 N.W.2d 479. In addition, the testimony of Bill Munday, another sales representative for defendant, supported Joe Tucker's testimony that plaintiff was entitled to receive commissions for as long as the parts continued to be run and that the agreement between defendant and plaintiff did not address whether commissions would continue to be paid following the termination of plaintiff's representation of defendant. Moreover, the trial court's determination that plaintiff is entitled to commissions on orders procured by plaintiff "for the life of the part," i.e., posttermination commissions, is consistent with Michigan law. Id. at 294-295, 89 N.W.2d 479; Del-Met, supra.

IX
Defendant argues that the trial court abused its discretion in qualifying Ronald Markowski as an expert in accounting and in admitting his testimony regarding the amount of unpaid commissions owed to plaintiff. We disagree. Contrary to defendant's assertion, plaintiff moved to have Markowski qualified as an expert in accounting. Thereafter, the trial court qualified Markowski as an expert witness in certified public accounting. Certified public accountants have been recognized as experts, whose opinions are entitled to be given great weight. Nat'l-Standard Co., v. Dep't of Treasury, 384 Mich. 184, 193-194, 180 N.W.2d 764 (1970). The trial court did not abuse its discretion in qualifying Markowski as an expert. Mulholland v. DEC Int'l Corp., 432 Mich. 395, 402, 443 N.W.2d 340 (1989); Lopez v. General Motors Corp., 224 Mich.App. 618, 635, 636, 569 N.W.2d 861 (1997).
Defendant also asserts that the information on which Markowski based his opinion was of little probative value and was also inaccurate and unreliable because the information on which Markowski relied consisted of summary sheets prepared by plaintiff's attorney. After reviewing the record, we conclude that the information on which Markowski relied was sufficiently reliable to form the basis for his expert opinion and also assisted the trier of fact. Amorello v. Monsanto Corp., 186 Mich.App. 324, 332, 463 N.W.2d 487 (1990). We note that although defendant is correct in stating that Markowski was provided with summary sheets prepared by plaintiff's attorney, Markowski testified that he verified the accuracy of the information provided to him by plaintiff's counsel on the sales summaries by checking that information against the original sales invoices and sales analyses provided by defendant. Further, Markowski testified that on the *187 basis of this verification, he was confident that the parts summary provided to him by plaintiff's counsel accurately reflected the information provided by defendant. In addition, defendant's criticisms of Markowski's knowledge about the information goes to the weight, not the admissibility, of his testimony. MRE 702; Triple E Produce Corp. v. Mastronardi Produce, Ltd., 209 Mich.App. 165, 175, 530 N.W.2d 772 (1995).

X
Defendant argues that the trial court erred in denying its motions for summary disposition with regard to plaintiff's claims of fraud (count II), misrepresentation (count III), and detrimental reliance (count IV). We disagree. Defendant asserts on appeal that the trial court should have granted its motions for summary disposition pursuant to MCR 2.116(C)(10) (no genuine issue regarding any material fact), but defendant did not move for summary disposition pursuant to MCR 2.116(C)(10) with respect to plaintiff's claims of fraud, misrepresentation, and detrimental reliance. Defendant's motions for summary disposition stated that summary disposition was appropriate based on MCR 2.116(C)(8) (failure to state a claim), and not MCR 2.116(C)(10), with respect to the fraud, misrepresentation, and detrimental reliance claims.[8] Thus, we will address this issue with respect to MCR 2.116(C)(8).
A motion under MCR 2.116(C)(8) for failure to state a claim tests the legal sufficiency of a claim and is tested on the pleadings alone. Singerman v. Municipal Service Bureau, Inc., 455 Mich. 135, 139, 565 N.W.2d 383 (1997). All factual allegations must be taken as pleaded, as well as any reasonable inferences that may be drawn therefrom. Id. To assert an action for fraud or misrepresentation, a plaintiff must allege (1) that the defendant made a material representation, (2) that the representation was false, (3) that when the defendant made the representation, it was known to be false, or was made recklessly, without any knowledge of its truth and was made as a positive assertion, (4) that the defendant made the representation with the intention that it should be acted on by the plaintiff, (5) that the plaintiff acted in reliance on it, and (6) that the plaintiff suffered damages as a result. Hi-Way Motor Co. v. Int'l Harvester Co., 398 Mich. 330, 336, 247 N.W.2d 813 (1976), citing Candler v. Heigho, 208 Mich. 115, 121, 175 N.W. 141 (1919), overruled in part on other grounds in United States Fidelity & Guaranty Co. v. Black, 412 Mich. 99, 120-121, 313 N.W.2d 77 (1981).
In its pleadings, plaintiff alleged that defendant represented to plaintiff that the unilateral reduction in plaintiff's commission for the Rockwell differential case work would be only temporary until the job was "up and running." Plaintiff further alleged that defendant knew that the representations were false when they were made, or that they were made as positive assertions without any knowledge of their truth, that the misrepresentations induced plaintiff to not take action against defendant, and that plaintiff suffered damages as a result. On the basis of our review of the pleadings alone, Singerman, supra, we find that plaintiff sufficiently alleged fraud, misrepresentation, and detrimental reliance,[9]Hi-Way Motor Co, supra.

XI
Defendant contends that the trial court erred in denying its motion for summary disposition of plaintiff's claim for *188 quantum meruit. We disagree. A motion for summary disposition brought pursuant to MCR 2.116(C)(10) tests the factual support for a claim. Singerman, supra. In ruling on the motion, the court must consider the pleadings, affidavits, depositions, and other documentary evidence. Id.
Pursuant to MCR 2.111(A)(2), plaintiff was entitled to bring alternative counts of breach of contract and implied contract. However, a contract cannot be implied in law while an express contract covering the same subject matter is in force between the parties. Neal v. Neal, 219 Mich.App. 490, 495, 557 N.W.2d 133 (1996); Cascade Electric Co. v. Rice, 70 Mich.App. 420, 426, 245 N.W.2d 774 (1976). In the present case, the trial court could have found that an express contract was originally formed between the parties but that subsequently the contract was no longer in force. Under such circumstances, plaintiff could have recovered for breach of contract for the period when the contract was in force and could have recovered on an implied contract basis for the period when there was no contract in force. Alternatively, the court could have found that the express verbal agreement between the parties covered certain subjects concerning plaintiff's commissions but did not cover other subjects. Id. at 426-427, 245 N.W.2d 774. Finally, the trial court in the present case could have found that there was no contract between the parties, especially because one of the original contracting parties was now deceased and because the material terms of the contract were disputed by the parties. In that case, any recovery by plaintiff would have been on an implied contract basis. As stated by this Court in Cascade, at 427, 245 N.W.2d 774, "plaintiff was not required to elect to proceed under one theory or the other, but could seek recovery on the basis either of an express verbal contract, or an implied contract if the [trier of fact] found that the express verbal contract did not exist."

XII
Finally, defendant argues that the trial court erred in determining that plaintiff did not breach its fiduciary duties to defendant. We disagree. Under principles of agency, an agent owes his principal a duty of good faith, loyalty, and fair dealing. Burton v. Burton, 332 Mich. 326, 337, 51 N.W.2d 297 (1952). An agent's dual representation of competitors is not necessarily a breach of the duty of loyalty and fair dealing where the agent believes that he is privileged to undertake such representation and has disclosed his representation of competitors to the principals involved. Sweeney & Moore, Inc. v. Chapman, 295 Mich. 360, 363, 294 N.W. 711 (1940); see, also, Del-Met, supra at 1283-1285.
In the present case, the trial court's finding that plaintiff did not breach its duty of loyalty to defendant was supported by the evidence. In addition to Joe Tucker's testimony, other witnesses testified that Joe Tucker fully disclosed to defendant that he represented other companies. The evidence also showed that defendant did not object to Tucker's representation of other companies as long as it did not take work away from defendant and that defendant was not denied contracts or suffered in any way from plaintiff's representation of other companies.
We affirm.
MacKENZIE, P.J., concurs.
MARKMAN, J. (concurring).
I concur with the majority's opinion with regard to all issues in this case. However, I write separately to further discuss the statute of limitations issue in section IV of the majority opinion and to express reservations regarding the outcome of this issue, although I ultimately join in the affirmance in this case.
As a preliminary matter, I feel that a more complete exposition of the facts regarding the contract in this case and the breaches of the contract is necessary to *189 fully understand the statute of limitations issue. The trial court determined, and this Court affirms, that Joe Tucker orally contracted in 1957 with Julien VanMaele of defendant corporation to seek customers for defendant in return for a five percent commission on all sales Tucker procured for defendant.[1] Further, the contract was unusual in that it was "for the life of the part," which meant that once Tucker made an initial sale of a part to a customer, he received a commission on all future sales or reorders of that part, even if his position with defendant was terminated for any reason.[2] The commissions were paid monthly, upon defendant's invoicing its customers for work produced that month. In 1986, defendant unilaterally reduced Tucker's commission on a Rockwell International project from five percent to three percent.[3] However, the rest of plaintiff's commissions continued as under the original contract. From 1988 through 1990, defendant unilaterally reduced certain commissions by different percentages or completely eliminated Tucker's representation on at least five different accounts, while leaving Tucker's commissions on the remaining accounts at the rate agreed to in 1957. Thus, regardless of whether Tucker's commission payments are treated as installment payments as in the majority opinion, there was clearly more than one breach of the contract in this case. This is contrary to defendant's argument that the six-year contract period of limitation completely bars plaintiff's claim because the original, 1986 breach of the contract was more than six years before plaintiff filed suit in 1993. Instead, while it appears undisputed that damages for payments due more than six years before this suit was filed are barred by the statute of limitations, damages from the 1988, 1989, and 1990 breaches would not be barred by the statute of limitations even if the contract in this case were not treated as an installment contract.
With these facts established, I next address the pivotal question: When did plaintiff's claim accrue? Because, as the majority correctly points out, a breach of contract claim accrues when the promisor fails to perform under the contract, namely, when the breach occurs, Cordova Chemical Co. v. Dep't of Natural Resources, 212 Mich.App. 144, 153, 536 N.W.2d 860 (1995), and "the period of limitations runs from the time the claim accrues," M.C.L. § 600.5827; MSA 27A.5827, it is necessary to determine whether plaintiff's claim accrued when defendant unilaterally changed the contract in 1986, 1988, 1989, and 1990, or accrued each month as plaintiff's commission payment came due. The majority concludes that claims for payments due under the contract here are analogous to claims for payments due under an installment contract, claims for alimony payments, or claims for pension payments. However, I believe that a more detailed examination of the issue is in order.
Installment contract claims accrue as each installment falls due, M.C.L. § 600.5836; MSA 27A.5836, so that the statutory period of limitation runs separately with respect to each installment as it becomes due. Sparta State Bank v. Covell, 197 Mich.App. 584, 587, 495 N.W.2d 817 (1992). Unfortunately, § 5836 does not provide a definition of "installment contract." 3A Corbin, Contracts, § 687, p. *190 245, however, offers a broad definition of "installment contract":
An installment contract is one in which the agreed performance of at least one of the parties is to be rendered, not as a whole at one time and place, but piecemeal at different times or different places.
See Jackson v. American Can Co., Inc., 485 F.Supp. 370, 374 (W.D.Mich., 1980). The Legislature also determined that alimony payments accrue as each payment falls due, as with an installment contract, M.C.L. § 600.5837; MSA 27A.5837. In addition, this Court has held that pension benefits are similar to installment contracts so that the limitation period runs from the date each installment is due. Harris v. City of Allen Park, 193 Mich.App. 103, 107, 483 N.W.2d 434 (1992); see also Adams v. Detroit, 232 Mich.App. 701, 591 N.W.2d 67 (1998). However, these pension cases merely state conclusorily that pensions are like installment contracts, without any analysis of the connection with, or of the holding's effect on, statute of limitations policy. Further, in Petovello v. Murray, 139 Mich.App. 639, 362 N.W.2d 857 (1984), this Court held that a commission contract in which the plaintiff agreed to provide a lessee for the defendant's property, and the defendant agreed to pay the plaintiff $150 a month commission for the term of the lease, was an installment contract, although again without much elucidation. It appears in Petovello that this Court relied in part on the doctrine of anticipatory repudiation to so hold, because where there exists only a unilateral obligation to pay money in the future because the other party has already completed performance, no cause of action arises until the date of performance and a party cannot sue to collect the entire amount before the time each payment is due. Id. at 645-646, 362 N.W.2d 857; Brauer v. Hobbs, 151 Mich.App. 769, 776, 391 N.W.2d 482 (1986), citing Jackson, supra at 374-375.
Thus, current law does appear to point in the majority's direction, although it requires several leaps of logic, because there is little analysis in these cases to explain the conclusions that different types of contracts are akin to installment contracts. Indeed, I believe that the contract at issue here can be considered analogous to a pension, because in each case there is an aggregate amount of money due at some point, even though the contractor/pensioner is not entitled to all of it at any one time. Each must wait until the condition precedents to collecting the money are fulfilled each month in order to become entitled to collect each payment, even though their obligation under the contract has already been fulfilled. The analogy is imperfect, because plaintiff here must not only survive to claim each payment like the pensioner with his vested pension, but plaintiff is also dependent on further orders on its accounts to entitle it to commissions. However, I believe the analogy may be close enough so that we may treat the current contract like a pension contract, which has already been held analogous to an installment contract. In addition, in Petovello, supra at 644-645, 362 N.W.2d 857, the condition precedent to the commission payment of the payment of rent by a third party did not preclude this Court from finding that the contract was an installment contract. The facts of this case also show that, while plaintiff had performed its duty under the contract of obtaining clients for defendant, defendant had a continuing, unilateral duty to pay plaintiff the money due plaintiff each month. Thus, the doctrine of anticipatory repudiation would seem to mandate that no cause of action would arise until payments were due, because it was possible for defendant to revoke its repudiation and satisfy its obligation under the contract until such time. Brauer, supra at 776, 391 N.W.2d 482, citing Jackson, supra at 375.
While accepting the above analysis, I remain troubled by the results in this case. In my judgment, the doctrine of continuing breaches may be extended too far in this *191 case, potentially undermining the policy rationale envisioned by the Legislature in enacting a statute of limitations. The Supreme Court has stated:
Limitations periods created by statute are grounded in a number of worthy policy considerations. They encourage the prompt recovery of damages; they penalize plaintiffs who have not been industrious in pursuing their claims; they "afford security against stale demands when the circumstances would be unfavorable to a just examination and decision"; they relieve defendants of the prolonged fear of litigation; they prevent fraudulent claims from being asserted; and they "`remedy ... the general inconvenience resulting from delay in the assertion of a legal right which it is practicable to assert.'" [Lothian v. Detroit, 414 Mich. 160, 166-167, 324 N.W.2d 9 (1982) (citations omitted).]
With these policies in mind, it appears that the critical points in the instant sequence of events were at the time of each affirmative decision by defendant to reduce or eliminate plaintiff's commissions on individual accounts, in 1986, 1988, 1989, and 1990. The actions of defendant could reasonably be viewed as a single breaching of the contract at the time of these affirmative decisions. Thereafter, defendant paid plaintiff what plaintiff was owed in full under the altered contract. At the moment the commissions were initially reduced, plaintiff was clearly put on notice that the status quo was being changed and that its rights under the contract were being altered. It seems to me that these are the points at which plaintiff knew that it could file a contract action against defendant, yet it waited beyond the statutory limitation period to do so.
Under the installment contract analogy, plaintiff is allowed, even perhaps required, to sit on its right to sue, even though it was already fully apprised that defendant intended a permanent change of contract. Thus, it appears that plaintiff could have continued to hold defendant captive to a potential suit indefinitely; there could never be finality on the propriety of defendant's decision to alter plaintiff's commission In this situation, there would be no prompt recovery of damages and the penalty for a plaintiff who was not diligent in pursuing claims would be severely limitedplaintiff would merely be limited to damages from the last six years rather than having its claims completely barred. See Lothian, supra at 166-167, 324 N.W.2d 9. Perhaps most significant, the protection against stale demands offered by a statute of limitations would be largely vitiated. Id. Thus, it appears that likening the contract in this case to an installment contract erodes the purposes behind the enactment of statutes of limitations.
Although I am troubled by the results in this case, which allow plaintiff to take no legal action indefinitely yet still maintain its right to sue on the contract, I recognize that the law appears to weigh in favor of the majority's position in this case. In the absence of any alternative case law based on the policy of the statute of limitations, or otherwise finding that a commission contract of the sort involved in this case is not akin to an installment contract, I reluctantly concur with the majority's position on this issue. Thus, I join the majority's opinion on all issues, including the statute of limitations issue, finding that the commission contract here is analogous to an installment contract and therefore that the limitation period runs from the due date of each monthly payment.
NOTES
[1] For the purposes of this opinion, Joe Tucker is synonymous with plaintiff corporation.
[2] Schomer eventually became the president of defendant corporation in 1990.
[3] Although we express no opinion regarding their constitutionality, we note that, like § 2961, other statutes contained within the RJA provide for the award of treble damages and specific sanctions for violations of their provisions. See, e.g., M.C.L. § 600.2919; MSA 27A.2919 (treble damages for anyone who cuts down trees, and so forth, without landowner's permission); MCL 600.2911; MSA 27A.2911 (exemplary and punitive damages possible in libel actions).
[4] Defendant's reliance on Sam v. Balardo, 411 Mich. 405, 423-424, 308 N.W.2d 142 (1981), and Connelly v. Paul Ruddy's Equip. Repair & Service Co., 388 Mich. 146, 151, 200 N.W.2d 70 (1972), is misplaced. Although the Court in Sam and Connelly stated that the RJA is an act that affects procedural rights but does not establish substantive rights, neither case applied that reasoning to the Title-Object Clause of the Michigan Constitution.
[5] The Sixth Circuit Court of Appeals more recently affirmed its holding that § 2961 does not violate the Title-Object Clause of the Michigan Constitution in Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc., 96 F.3d 174, 182 (C.A.6, 1996).
[6] Defendant also asserts that the trial court erred in giving any weight to Joe Tucker's testimony regarding his agreement with VanMaele because that testimony was contradicted by Melvin Schalhamer, who became president and then chairman of defendant's board after VanMaele's death. However, as pointed out by plaintiff, if the trial court should have disregarded Tucker's testimony because of his interest in the outcome of the case, then it should have also disregarded Schalhamer's testimony (and other employees of defendant) for the same reason.
[7] Taylor is also referred to in the record as Mary Leeann and Marilee.
[8] Defendant moved for summary disposition pursuant to MCR 2.116(C)(10) with regard to counts I (breach of contract), V (quantum meruit), VI (unjust enrichment), and VII (breach of fiduciary duty).
[9] Even assuming, as defendant argues, that the trial court erred in not granting summary disposition with respect to the detrimental reliance claim (count IV) because detrimental reliance merely constitutes an element of a misrepresentation claim, as opposed to a separate ground for relief, we conclude that any error was harmless because plaintiff recovered only on its breach of contract claim.
[1] Tucker testified that there were two exceptions to the commission agreement: (1) a large contract for Motor Wheel involving multiple small parts for which Tucker agreed to accept a 2-1/2 percent commission (the Motor Wheel hub job), with five percent to be paid on all other Motor Wheel work; (2) Tucker would receive a ten percent commission for jobs for which the customer supplied the necessary equipment without charge to defendant, because defendant would not have to purchase the equipment.
[2] See section VIII of the majority opinion.
[3] Although defendant stated that this reduction was temporary, plaintiff's commission on this job was never increased.