KENNETH HENES SPECIAL PROJECTS PROCUREMENT, Marketing and Consulting Corporation, Plaintiff,

v.

CONTINENTAL BIOMASS INDUSTRIES, INC., Defendant.

No. 98–CV–72966–DT.

United States District Court, E.D. Michigan, Southern Division.

Feb. 10, 2000.

---

Randall J. Gillary, Troy, MI, for plaintiff.

George W. Burnard, Troy, MI, for defendant.

*OPINION AND ORDER REGARDING (1) DEFENDANT'S MOTION FOR NEW TRIAL AND AMENDMENT OF JUDGMENT; (2) PLAINTIFF'S MOTION FOR AMENDMENT OF JUDGMENT; AND (3) PLAINTIFF'S MOTION FOR ATTORNEYS' FEES*

ROSEN, District Judge.

## I. *INTRODUCTION*

This matter is before the Court on a number of post-trial motions, to-wit, (1) Defendant's Motion for New Trial and Amendment of Judgment; (2) Plaintiff's Motion for Amendment of Judgment; and (3) Plaintiff's Motion for Attorney Fees. Having reviewed and considered the parties' motion, briefs and supporting documents, and the Court's record of this action, the Court has determined that oral argument is not necessary, therefore, pursuant to Local Rule 7.1(e)(2), these motions will be decided on the briefs. This Opinion and Order sets forth the Court's ruling.

## II. *PERTINENT FACTS*

Plaintiff Kenneth Henes Special Projects, Procurement, Marketing and Consulting Corporation ("Henes") is a former sales representative of Defendant Continental Biomass Industries, Inc. ("CBI"). After CBI terminated its eight-year-long relationship with Henes in 1998, Henes brought suit to recover unpaid commissions due and owing as a result of sales of CBI equipment procured by Henes. In its Amended Complaint, Henes sought recovery of the unpaid commissions under two theories—common law breach of contract and violation of the Michigan Sales Representative Act, M.C.L. § 600.2961.

The case was tried to a jury and after a five-day trial, the jury returned a verdict finding that Plaintiff was owed commissions by Defendant on four sales. Specifically, the jury found that Plaintiff was owed commissions of $12,493 on a December 1996 sale of equipment to Draw Leasing; $35,000 on a June 1997 sale of equipment to Draw Leasing/Suburban Recycling; $50,200 on a May 1998 sale to Midwest Forestry; and $37,500 on a 1998 sale to Megacity. The jury further found that with respect to all but the 1996 sale to Draw Leasing, CBI intentionally failed to pay Henes the sales commissions.

Applying the Michigan Sales Representative Act's "double commissions" provision for intentional failure to pay commissions to the Suburban Recycling, Midwest Forestry and Megacity sales, the Court entered a $257,493.00 Judgment in favor of Plaintiff and against Defendant as follows:

Ct. 1: $12,493.00

Ct. 2: $70,000.00 (Suburban Recycling sale jury verdict of $35,000 × 2)

Ct. 3: $100,000.00 (applying the statutory double commissions cap to the Midwest Forestry sale)

Ct. 4: $75,000.00 (Megacity sale jury verdict of $37,500 × 2)

Following entry of the Judgment, Defendant CBI moved for a New Trial and Amendment of Judgment. Plaintiff Henes responded by filing its own Motion for Amendment of Judgment and a Motion for Attorney Fees. All of these Motions, in one way or another, present issues of applicability and interpretation of the Michigan Sales Representative Statute, M.C.L. § 600.2961.

## A. *THE MICHIGAN SALES REPRESENTATIVE STATUTE*

M.C.L. § 600.2961 provides, in relevant part, as follows:

(1) As used in this section:

(a) "Commission" means compensation accruing to a sales representative for payment by a principal, the rate of which is expressed as a percentage of the amount of orders or sales or as a percentage of the dollar amount of profits.

(b) "Person" means an individual, corporation, partnership, association, governmental entity, or any other legal entity.

(c) "Prevailing party" means a party who wins on all the allegations of the complaint or on all of the responses to the complaint.

(d) "Principal" means a person that does either of the following:

(i) Manufactures, produces, imports, sells, or distributes a product in this state.

(ii) Contracts with a sales representative to solicit orders for or sell a product in this state.

(e) "Sales representative" means a person who contracts with or is employed by a principal for the solicitation of orders or sale of goods and is paid, in whole or in part, by a commission. Sales representative does not include a person who places an order or sale for a product on his or her own account for resale by that representative.

(2) The terms of the contract between the principal and sales representative shall determine when a commission becomes due.

(3) If the time when the commission becomes due cannot be determined by a contract between the principal and sales representative, the past practices between the parties shall control or, if there are no past practices, the custom and usage prevalent in this state for the business that is the subject of the relationship between the parties.

(4) All commissions that are due at the time of termination of a contract between a sales representative and principal shall be paid within 45 days after the date of termination. Commissions that become due after the termination date shall be paid within 45 days after the date on which the commission became due.

(5) A principal who fails to comply with this section is liable to the sales representative for both of the following:

(a) Actual damages caused by the failure to pay the commissions when due.

(b) If the principal is found to have intentionally failed to pay the commission when due, an amount equal to 2 times the amount of commissions due but not paid as required by this section or $100,000.00, whichever is less.

(6) If a sales representative brings a cause of action pursuant to this section, the court shall award to the prevailing party reasonable attorney fees and court costs.

## B. *THE PARTIES' ARGUMENTS*

In its Motion for New Trial and Amendment of Judgment, Defendant CBI asserts three arguments. First, Defendant contends that the Michigan Sales Representative Act, M.C.L. § 600.2961 does not apply

at all to any of the commissions involved in this matter because none of the sales giving rise to the commissions sought by Plaintiff occurred within the State of Michigan.

Second, assuming that the statute applies to these commissions, Defendant contends that the Court erred in refusing to give the instruction it had proffered on "intentional failure to pay" commissions. Defendant's last argument is that the $100,000 cap on double commissions provided in § 600.2961(5)(b) is a cap on doubling commissions in the aggregate, and not a per commission cap. Therefore, the Court's $257,493 Judgment reflecting double commissions on the Suburban Recycling and Megacity sales and the application of the $100,000 capped double damages on the Midwest Forestry sale is erroneous. CBI contends that the Judgment should reflect the jury verdict amount on each of the sales (i.e., $12,493 + $35,000 + $50,200 + $37,500) plus a single capped Section 2961(5)(b) intentional-failure-to-pay penalty of $100,000 for a total award of $235,193.00.

Plaintiff agrees that the Judgment entered in this case is erroneous but counters in its own Motion for Amendment of Judgment that the Judgment should be for *more* than the $257,493 reflected therein. Plaintiff contends that under subsection (5) of § 600.2961 it is entitled to recover on *each* of the three intentional-failure-to-pay commissions the jury verdict amount *plus* as to each of these three commissions either a doubled amount or $100,000, whichever is less. Thus, Plaintiff argues that the damages awarded in the Judgment should be as follows:

| | |
|---|---|
| Transaction #1 (Draw Leasing)—commissions | $ 12,493 |
| Transaction #2 (Suburban Recycling)—commissions | $ 35,000 |
| § 2961(5)(b) double commissions penalty | $ 70,000 |
| Transaction #3 (Midwest Forestry)—commissions | $ 50,200 |
| § 2961(5)(b) penalty (capped) | $100,000 |
| Transaction #4 (Megacity)—commissions | $ 37,500 |
| § 2961(5)(b) double commissions penalty | $ 75,000 |
| **Total Damages:** | **$380,193** |

Plaintiff also contends that the Judgment should be further amended to include provisions for pre-complaint interest, prejudgment interest and post-judgment interest. Additionally, in Henes' separately filed Motion for Attorney Fees, Plaintiff seeks an award of attorneys fees pursuant to § 600.2961(6) in the amount of $71,760.00.

CBI does not dispute Plaintiff's entitlement to pre- and post-judgment interest (although it does dispute Plaintiff's calculation of these sums) but does contest any awarding of "pre-complaint" interest. Defendant further argues that Plaintiff is not entitled to an award of attorneys fees under section 2961(6) because it contends that since Plaintiff did not prevail "on *all* the allegations of the complaint," it does not meet the statutory definition of a "prevailing party," and hence, does not qualify for an award of fees and costs.

## III. DISCUSSION

### A. STANDARDS APPLICABLE TO RULE 59 MOTIONS FOR AMENDMENT OF JUDGMENT AND NEW TRIAL

Defendant brings the instant Motion for Amendment of Judgment and for New Trial pursuant to Fed.R.Civ.Pro. 59.[1]

Motions to amend a judgment pursuant to Rule 59(e) "are entrusted to

---

1. The more appropriate vehicle for Defendant to have utilized to advance its arguments of inapplicability of the Michigan Sales Representative Statute and the alleged error in the Court's instruction on "intentional failure to pay" would have been a Fed.R.Civ.Pro. 50 motion for judgment as a matter of law. Presumably, Defendant has elected to proceed under Rule 59(e) because as the Court has already found in overruling Defendant's objections to jury instructions after the case was submitted to the jury, Defendant, having failed to move for Judgment as a Matter of Law prior to the submission of the case to the jury, has waived its right to proceed with a motion under Rule 50. *See, Libbey–Owens–Ford Company v. Insurance Company of North America,* 9 F.3d 422, 425–27 (6th Cir.1993).

the Court's sound discretion." *Nagle Industries, Inc. v. Ford Motor Company*, 175 F.R.D. 251, 254 (E.D.Mich.1997), *aff'd* 194 F.3d 1339 (Fed. Cir.1999); *Keweenaw Bay Indian Community v. United States*, 940 F.Supp. 1139, 1140 (W.D.Mich.1996) (citing *Huff v. Metropolitan Life Ins. Co.*, 675 F.2d 119, 122 (6th Cir.1982)), *rev'd on other grounds*, 136 F.3d 469 (6th Cir.1998). Rule 59 motions are generally granted for only three reasons:

> (1) because of an intervening change in the controlling law; (2) because evidence not previously available has become available; or (3) necessity to correct a clear error of law or prevent manifest injustice.

*Nagle v. Ford Motor Company, supra.*

■ Such motions, however "are not intended as a vehicle to relitigate previously considered issues; should not be utilized to submit evidence which could have been previously submitted in the exercise of reasonable diligence; and **are not the proper vehicle to attempt to obtain a reversal of a judgment by offering the same arguments previously presented.**" *Id.* (internal quotations and citations omitted).

■ With respect to Defendant CBI's arguments of inapplicability of the Michigan Sales Representative Statute and the alleged error in the Court's instruction on "intentional failure to pay," CBI makes the same arguments that it has already presented to the Court at trial. Therefore, Defendant is not entitled to have the judgment overturned in this case by way of Fed.R.Civ.Pro. 59(e).

Defendant has also moved for a new trial pursuant to Rule 59(a). One ground

for a new trial is the submission to the jury of an issue not appropriate for its consideration. *Libbey–Owens–Ford Company v. Insurance Company of America, supra,* 9 F.3d at 427. However, in order to be entitled to seek a new trial on this ground, the Sixth Circuit requires that a formal objection be made not only after, but also *before* the jury instructions are given, unless it is plainly apparent from the discussion between the parties and the judge that the judge was aware of a party's dissatisfaction with the instruction *and the specific basis for that claimed error or omission. Id.* (quoting *Woodbridge v. Dahlberg*, 954 F.2d 1231, 1237 (6th Cir. 1992)). "In fairness to the trial court and to the parties, objections to a charge must be sufficiently specific to bring into focus the precise nature of the alleged error." *Libbey–Owens–Ford, supra.* (quoting *Palmer v. Hoffman*, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943)).

With respect to Defendant's argument of inapplicability of the Michigan Sales Representative Statute, Defendant first presented this argument to the Court *after* the case had been submitted to the jury, in the form of an objection to the Court's instruction on the statute and its intentional-failure-to-pay provision. As the Court pointed out to Defendant on the record, its after-the-fact objection was untimely and improper; that what in effect CBI was doing in presenting its post-jury submission objection to the Court was an untimely substantive, dispositive argument that should have been made during motion practice, either in a motion for summary judgment, a motion *in limine*, or at the latest, at the close of proofs in a directed verdict motion.[2]

2. The Court's on-the-record colloquy with Defendant's counsel regarding Defendant's objection to the instruction on the Michigan Sales Representative Statute after the case had been submitted to the jury was as follows:

MR. BURNARD: I want to object to the entire instruction for two reasons. First of all I earlier submitted for consideration by the court an instruction that also had the language at the very end: Quote: "Intentional

failure to pay means that the defendant knew a commission was due the plaintiff and chose not to pay it." End quote. I want the record to shows I'm tendering that instruction and you've obviously turned it down. But also, I object to the instruction being given at all because I think the statute applies to Michigan sales and there's no Michigan sales.

THE COURT: When did this light bulb go on, Mr. Burnard? You know, this is another

While it is true that Defendant did object to the jury instruction on the statute prior to submitting the case to the jury, the only pre-jury submission objection made by Defendant on this instruction concerned the Court's refusal to append to the instruction on the statute an instruction defining "intentional failure to pay." Defendant never presented to the Court its argument that the statute only applied to Michigan sales prior to the submission of the case to the jury.

It is precisely for the same reasons that the Sixth Circuit found no error in the district court's denial 'of a motion for amendment of judgment and new trial in *Libbey–Owens–Ford v. Insurance Company of North America, supra.* In that case, the plaintiff moved post-trial for judgment as a matter of law, to alter or amend the judgment, and for a new trial contending that the jury should not have been asked to consider the applicability of a "wear and tear" exclusion clause in an insurance policy because it argued that by its terms, the exclusion clause did not apply. The district court denied that motion finding that the plaintiff had waived its right to complain about the submission of the wear and tear exclusion issue to the jury. The appellate court affirmed the district court in all respects, and made the following observations with respect to the denial of the motion for new trial:

> LOF [Libbey–Owen–Ford] did address the inapplicability of the wear and tear exclusion in its trial brief, but [did not] request a ruling on the issue. . . . Similarly, the issue was raised obliquely in written and oral objections to jury instructions, but never with the clarity and specificity which would have alerted the trial court that a legal ruling was in order.
>
> . . . LOF did not move for a directed verdict on this issue nor request a ruling in a manner that could be construed to be directed verdict motion. LOF did not move for summary judgment that the wear and tear exclusion was inapplicable, did not move to strike INA's affirmative defense based on the wear and tear exclusion, and did not move for a ruling in limine that evidence of wear and tear was irrelevant. . . .
>
> There is no indication that LOF ever asked the trial court for a ruling on this legal issue or that the trial court was ever aware [prior to submitting the case to the jury] of the need for such a ruling. LOF's failure to specifically and directly object to the jury instructions, thereby demanding a ruling from the trial court, constituted a waiver of the

area which is a completely dispositive issue that should have been brought first in motion practice, [before] the motion cut-off. At the very latest it should have been brought in the context of a motion in limine and/or at the close of proofs.

MR. BURNARD: Well I apologize.

THE COURT: To bring this up on a dispositive basis now after the jury has been instructed I find difficult to believe.

MR. BURNARD: It is in the [proposed] final pretrial order. I'll remind the court that they were allowed to amend their complaint add this matter at the very last moment. We were hardly given time.

THE COURT: Did you ever bring a motion sir?

MR. BURNARD: I did not.

THE COURT: Did you bring a motion during motion practice?

MR. BURNARD: We're out of motion practice. We were out of time. We had no time left to do such things.

THE COURT: Answer my question, Mr. Burnard. There was dispositive motion cut off. Did you bring a motion?

MR. BURNARD: I did not.

THE COURT: Did you bring a motion in limine to preclude proofs on these sales?

MR. BURNARD: I did not.

THE COURT: Did you bring a directed verdict motion?

THE DEFENDANT: I did not.

THE COURT: All right denied. I can't solve these problems, Mr. Burnard. You know, once the toothpaste is' out of the tube, I can't solve these problems. Furthermore, I don't know that the law even supports you. It's an interesting theory that you've got but I don't know that there's any law that supports it.

MR. BURNARD: There's no law on the subject that I can find.

THE COURT: It would have been interesting to look at it, but, certainly at this point its waived.

objection. The district court did not err in instructing the jury.

9 F.3d at 427–28.

The foregoing makes clear that Defendant here has waived its right to argue that the Michigan Sales Representative Statute does not apply. As the district court in the *Libbey–Owens–Ford* case found, Defendant CBI failed to sufficiently "tug on the hem of the court's robe" to bring this issue to Court's attention prior to submitting the case to the jury. *See Libbey–Owens–Ford,* 9 F.3d at 426. Therefore, with respect to Defendant's argument of inapplicability of the Michigan Sales Representative Statute, Defendant's Motion for Amendment of Judgment and New Trial is denied.

B. *APPLICABILITY OF THE SALES REPRESENTATIVE STATUTE IS NOT LIMITED TO SALES MADE WITHIN THE STATE OF MICHIGAN*

However, even assuming *arguendo* that Defendant has not waived its right to argue inapplicability of the Michigan Sales Representative Statute, the Court would nonetheless deny Defendant's motion on this ground. Defendant's argument is that the Michigan Sales Representative Statute does not apply at all to any of the commissions at issue in this case because none of the sales giving rise to the commissions occurred within the State of Michigan. Defendant predicates this contention on its reading of the language in the statutory definition of "principal" in Section 2961(1)(d), which provides:

> (d) "Principal" means a person that does either of the following:
>
> (i) Manufactures, produces, imports, sells, or distributes a product *in this state.*
>
> (ii) Contracts with a sales representative to solicit orders for or sell a product *in this state.*

M.C.L. § 600.2961(1)(d) (emphasis added).

Defendant CBI's argument is that because none of the sales giving rise to the commissions at issue here occurred in the State of Michigan, it does not fit within the statutory definition of a "principal." Therefore, since the heart of the statute is the principal's liability for the "double commissions" intentional-failure-to-pay penalty provided in Section 2961(5), Defendant contends that that portion of the Jury Verdict addressing intentional failure to pay and the corresponding "double commissions" provided for in the Judgment should be stricken, and that the Judgment should be amended to reflect only the amount of actual commissions owing to Plaintiff.

Defendant has not proffered, nor has the Court independently found, any case law or legislative history supporting its "in-state sales only" construction of the statute. Statutory construction is a question of law for the court to decide. *United States v. Brown,* 915 F.2d 219, 223 (6th Cir.1990); *Williams v. Coyle,* 167 F.3d 1036, 1038 (6th Cir.1999). In interpreting a statute, a court must consider the language and design of the statute as a whole, as well as the specific provision at issue. *Schroyer v. Frankel,* 197 F.3d 1170 (6th Cir.1999). *See also, Arnold v. United Parcel Service,* 136 F.3d 854 (1st Cir.1998) (in statutory construction, the court focuses on the plain meaning of whole statute, not of isolated sentences, and interprets the statute's words in light of the purposes the legislature sought to serve); *United States v. Hartwell,* 73 U.S. (6 Wall.) 385, 396, 18 L.Ed. 830 (1867) (in construing a statute a court should adopt that sense of words which best harmonizes with context and promotes policy and objectives of the legislature). Further, statutory construction should be informed by both a statute's underlying policies and by common sense. *Martin v. Teamsters Local 480,* 946 F.2d 457, 461 (6th Cir.1991).

Applying the foregoing principles, the Court examines first the language of the statute. In this regard, the Court finds this statute to be one of the most haphazardly and inartfully drafted pieces of legislation that it has ever been called

upon to review. There is no stated scope of the statute, nor any specific declaration of applicability or intent. Further, numerous terms critical to an informed understanding of the legislation are left completely undefined, and several provisions are, at best, ambiguous and susceptible to differing interpretations as they can be read in both the conjunctive and disjunctive.

For example, with respect to the definition of "principal" called into question here, although the Court finds the first definition of the term in § 2961(1)(d)(i) to be reasonably clear—i.e., a "principal" is a person who manufactures, produces, imports, sells or distributes a product in Michigan—the Court can envision several plausible constructions of subsection (ii) due to the string of four prepositional phrases and the obviously inartful placement of the last prepositional phrase "in this state" within § 2961(1)(d)(ii).

As written, subsection (ii) states that a principal is person who "[c]ontracts with a sales representative to solicit orders for or sell a product in this state." One could read this subsection with the phrase "in this state" modifying the verb "contracts". As such, the statute would apply to a principal who *enters into a contract in Michigan* with a sales representative who may or may not be based in Michigan. Under this view, it would be the place of contracting that governs.

However, one could also read this subsection with "in this state" describing the situs of the sales representative with whom the principal has contracted. Under this construction, the statute would apply to sales representatives who have their businesses based in Michigan, regardless of the place of contracting. Or, one could read "in this state" as modifying the product sold by the sales representative (or the product for which the sales representative solicits orders). Under this interpretation, the statute would apply if orders were solicited in Michigan or the product was sold in Michigan.

The Legislature's muddled drafting has resulted in a hopelessly unclear law, leaving it up to courts to attempt to discern its meaning and determine the scope of its application.

Given that there is no stated scope of coverage of the Act within the statute— nor any statement of intent or applicability—and no recorded official legislative history to provide guidance, the Court looks to the stated rationale of the statute provided in the Senate Fiscal Agency's June 1992 "Bill Analysis" of Senate Bill 717, which is the bill that was ultimately enacted as the Sales Representative Statute [Defendant's Ex. 6]. This Bill Analysis, although not an official statement of legislative intent, appears to be the only recorded legislative interpretation of the Act.

According the SFA Bill Analysis, the rationale for enacting the Sales Representative Statute was to protect Michigan sales representatives and to ensure that they would timely receive payment for commissions earned by them. To effectuate these goals, the law would statutorily mandate penalties against principals for failure to make the payments promptly. *See* Defendant's Ex. 6. The Senate staff that prepared the analysis noted that sales representatives' problems in being promptly paid the commissions owed to them were prevalent "regardless of geographic territory or type of product sold." [See Defendant's Ex. 6.] This suggests to the Court that the applicability of the statute was not intended to be limited by the place where the sales representative solicits the order or sells a product. Rather, the Legislature's intent appears have been to assist Michigan sales representatives in recovering commissions they have earned, regardless of where they solicited the orders or sold the product.

This view is in accord with the structure of the statute. Section 2961(1)(d) has two definitions of "principal". A principal covered by the statute is one who fits within

*either* of the definitions provided in the two subsections of 2961(1)(d). Subsection (i) of Section 2961(1)(d) encompasses principals who sell, manufacture or distribute a product in the State of Michigan. The focus of this subsection is clearly on where a product is sold (or manufactured, or distributed). The focus of subsection (ii) is not on the act of selling a product in Michigan, but rather appears to be on the act of contracting with a sales representative in Michigan. To read the statute as Defendant CBI suggests construing the phrase "in the state" in both parts (i) and (ii) of subsection 2961(1)(d) as calling for application of the statute only when a sale occurs in Michigan would render subsection (ii) duplicative of subsection (i). As Defendant CBI acknowledges, the Legislature is presumed to have had a purpose in mind in inserting every clause in a statute. *Burns v. Auto–Owners Ins. Co.*, 88 Mich. App. 663, 666, 279 N.W.2d 43 (1979). Here, the Court presumes that, by subdividing the statutory definition of "principal," the Legislature intended to delineate separate and distinct occasions when the statute would apply, i.e., one when a sale (or production) of a product occurs in Michigan and one when a contract is entered into with a sales representative in Michigan to procure orders or to sell goods on the principal's behalf.[3]

For these reasons, the Court rejects Defendant's first argument for New Trial and Amendment of Judgment.

**3.** The Court urges the Michigan Legislature to promptly attend to this unhappy piece of legislative draftsmanship as the statute as written not only creates confusion, but invites courts to put their own gloss on the intent of the statute, surely a jurisprudentially unhealthy circumstance.

**4.** The specific pertinent language of the statute, M.C.L. § 600.2961, regarding failure to pay is as follows:
 (4) All commissions that are due at the time of termination of a contract between a sales representative and a principal shall be paid within 45 days after the termination. Commissions that become due after the termi-

### B. THE COURT DID NOT ERR IN REFUSING TO GIVE DEFENDANT'S PROFFERED "INTENTIONAL FAILURE TO PAY" INSTRUCTION

CBI next argues that the Court erred in refusing to give its proffered instruction on "intentional failure to pay". The Court's instruction on this issue tracked the language of the statute. Specifically, the Court instructed the jury as follows:

Under the Michigan Sales Representative's Commission Act, M.C.L. § 600.2961; M.S.A. § 27A.2961, a principal is required to pay all of the commissions due to a terminated sales representative within 45 days after termination, and to pay an commissions which become due after termination within 45 days after such commissions become due. If a principal is found to have intentionally failed to pay the commissions when due, the principal is liable for the overdue commissions, and for an additional amount equal to two times the overdue commissions, or $100,000.00 whichever is less.

I instruct you that Defendant, Continental Biomass Industries, Inc., is a principal as defined by the Sales Representative Commission Act. I further instruct you that Plaintiff, Kenneth Henes Special Projects Procurement, Marketing and Consulting Corporation, is a sales representative as defined by the Sales Representative Commission Act.

If you find that Defendant has failed to pay a commission owed to Plaintiff, you are to determine whether Defendant intentionally failed to pay such commission when it was due.[4]

nation date shall be paid within 45 days after the date on which the commission became due.
 (5) A principal who fails to comply with this section is liable to the sales representative for both of the following:
 (a) Actual damages caused by the failure to pay the commissions when due.
 (b) If the principal is found to have intentionally failed to pay the commission when due, an amount equal to 2 times the amount of commission due but not paid as required by this section or $100,000, whichever is less.
M.C.L. § 600.2961(4), (5).

Defendant CBI argued that the Court's instruction was not sufficient and proffered an instruction which included an additional sentence containing a definition of "intentional failure to pay". Specifically, CBI sought to append to the end of the above-quoted instruction the following language: "Intentional failure to pay means that Defendant knew a commission was due to the Plaintiff and chose not to pay it." The Court refused to give Defendant's proffered instruction.

CBI now claims that the Court erred in not giving the instruction it had proffered. It contends that statute's double damages provision is intended to be a punitive measure, and, therefore, the jury was required to make a determination that the Defendant acted "knowingly and willfully" in failing to pay the commissions, or acted in "bad faith" in order to find that Defendant "intentionally" failed to pay the commissions when they were due. Because the Court did not specifically define for the jury the phrase "intentional failure to pay" commissions as failing to pay "knowingly, willfully or in bad faith," CBI contends that the jury was improperly instructed and, based upon this contention that the instruction given by the Court was improper, moves for a new trial.

■ It is well-settled that when presented with a litigant's challenge of a trial court's refusal to give a requested jury instruction, the reviewing court is to consider the instructions given as a whole, and determine whether, taken as a whole, those instructions "fairly and adequately submit[ted] the issues and applicable law to the jury." *United States v. Martin*, 740 F.2d 1352, 1361 (6th Cir.1984), *cert. denied*, 472 U.S. 1029, 105 S.Ct. 3506, 87 L.Ed.2d 636 (1985). "A judge does not commit error because he or she fails to use language contained in a request, so long as the instruction given is accurate and sufficient." *Id.*

■ Turning then to Defendant CBI's challenge of the Court's refusal to give an instruction defining the term "intentional", as an initial matter, the Court notes that to the extent that CBI predicates its argument on what it calls the "legislative history" of § 2961 as stated in the "Senate Fiscal Agency's Bill Analysis," as indicated above, the SFA Analysis is not an official recording of legislative history.[5]

Nonetheless, even accepting the SFA Bill Analysis as an expression of legislature's intent, nothing in that document supports Defendant's argument that the Legislature intended that some element of "bad faith" would be required for the awarding of intentional-failure-to-pay double commissions. All that the Analysis states is that the double damages provision "should," in the event of noncompliance with the 45 day time limit for paying sales commissions to which representatives are entitled, "deter recalcitrant principals from failing to pay earned commissions." *Id.*

Defendant's "bad faith" argument suggests construing the double commissions provision as a "punitive damages" provision. However, such a construction was expressly rejected by the Sixth Circuit in *M & C Corp. v. Erwin Behr GmbH & Co.*, 87 F.3d 844 (6th Cir.1996). Although the precise issue in that case was the federal court's jurisdiction to vacate an international arbitrator's arbitration award, one sub-issue the appellate court was asked to rule upon was whether the arbitrator's award properly included "intentional failure to pay" damages pursuant to Section 2961. Defendant Behr argued that intentional failure to pay damages were punitive in nature, intending to punish guilty parties. 87 F.3d at 849. Therefore, it argued that the arbitrator could not include these damages in his award without giving Defendant special notice of the potential ap-

---

**5.** The Analysis, in fact, contains a clearly stated disclaimer that

"This analysis was prepared by nonpartisan Senate staff for use by the Senate in its

deliberations and *does not constitute an official statement of legislative intent.*"

[SFA Bill Analysis, Defendant's Ex. 6, p. 2 (emphasis added).]

plicability of the statute before issuing his decision. *Id.*

The Court of Appeals rejected Behr's argument that specific notice was required before Section 2961 double damages could be included. In reaching that conclusion, the Court discussed the legislative history of the statute and determined that the double commissions provision was not punitive, but rather compensatory in nature:

> As noted by the arbitrator in his award, the statute is compensatory in nature and merely designates another measure of damages for the breach of contract action against Behr. The arbitrator's examination of the legislative history of the [double damages] provision revealed that the statute was indeed an attempt by Michigan lawmakers to compensate sales agents for goodwill and other assets lost that would be difficult to quantify in a dispute. Thus, rather than requiring the harmed agents to resort to costly litigation to provide the detailed accounting necessary to ascertain all relevant damages, the legislature simply chose to assess those additional damages by requiring a principal who intentionally fails to pay commissions due to remit two times the amount to the agent.

> Because the damages are considered compensatory, the arbitrator correctly concluded that payment of such compensation pursuant to M.C.L. § 600.2961(5)(b) was envisioned by the terms of [the arbitration] reference.

*Id.* at 850.

Defendant attempts to analogize Section 2961's double commissions provision to the treble damages provision in M.C.L. § 600.2919 for cutting down trees on another's land without permission of the

owner as that statute was construed by the Michigan Court of Appeals decision in *Stevens v. Creek,* 121 Mich.App. 503, 328 N.W.2d 672 (1982).[6]

The Court finds this argument unpersuasive. As an initial matter, the Court notes that the court in *Stevens* declared that the treble damages provided by Section 2919 "are punitive in nature and are not designed to be imposed in the absence of active misconduct." *Id.* at 509, 328 N.W.2d 672. Thus, there is readily a stark contrast between the treble damages provision Section 2919 and the "compensatory" nature of the double commissions provision of Section 2961. Second, the *Stevens* court did not read into the statute a requirement of proof of "bad faith." All that the *Stevens* court said would be required to sustain a treble damages award under Section 2919 was proof that the defendant's trespass and cutting down of timber on the plaintiff's property was "willful or voluntary." *Id.* Because the plaintiff did not carry his burden of sufficiently proving by at trial that defendant willfully trespassed on defendant's land, the court determined that an award of treble damages would be improper. *Id.*

Even assuming that the *Stevens* "punitive" damages standard has some applicability here, both the Sixth Circuit and the Michigan courts have routinely equated the term "willful" with the term "intentional". *See e.g., United States v. Gregory,* 124 F.3d 200, 1997 WL 561422 (6th Cir. 1997), *cert. denied,* 522 U.S. 1083, 118 S.Ct. 869, 139 L.Ed.2d 766 (1998); *In re Air Crash Disaster,* 86 F.3d 498, 544 (6th Cir. 1996); *Thomson v. State Farm Ins. Co.,* 232 Mich.App. 38, 58, 592 N.W.2d 82, 91

---

**6.** Section 2919 provides in pertinent part as follows:

(1) Any person who:
(a) cuts down or carries off any wood, underwood, trees, or timber, or despoils or injures any trees on another's land ... without the permission of the owner of the lands ... is liable to the owner of the land ... for 3 times the amount of actual damages. If upon the trial of an action under

this provision or any other action for trespass on lands it appears that the trespass was casual or involuntary, or that the defendant had probable cause to believe that the land on which the trespass was committed was his own, or that the wood, trees or timber taken were taken for the purpose of making or repairing any public road or bridge, judgment shall be given for the amount of single damages only.

(1998); *Krim v. Osborne*, 20 Mich.App. 237, 241, 173 N.W.2d 737 (1969). Furthermore, the dictionary definition of "intentional" equates that term with "voluntary." *See, Webster's Ninth New Collegiate Dictionary* (1986).

The jurors in this case were instructed to consider the evidence presented "in the light of [their] own general knowledge and experience." The jurors were further instructed to "consider [the instructions] as a whole."

Viewing the jury instructions as a whole, given that the jury was instructed to use its "general knowledge and experience" in evaluating the evidence, and given that the accepted definitions of the term "intentional" equates that term with the terms "willful and voluntary," the Court's instruction, requiring the jury to first determine whether the Defendant failed to pay a commission owed to the Plaintiff, and if so, then, to also determine whether the Defendant "intentionally" failed to pay that commission, without specifically defining the term "intentional" as requested by Defendant, was sufficient.

Moreover, because the jury was specifically instructed to make two separate determinations—first, whether Defendant failed to pay the commissions and second, whether such failure to pay was intentional—and the verdict form that the jury was given expressly provided for two separate findings as to each commission, there is no merit to Defendant's contention that the jury was permitted, under the instruction given, to find "intentional" failure to pay on the part of CBI if CBI merely acted negligently in failing to pay Plaintiff the commissions.

For all of the foregoing reasons, the Court rejects Defendant's erroneous jury instruction argument and, accordingly, Defendant's Motion will be denied on this ground.

## C. THE $100,000 CAP ON DOUBLE DAMAGES APPLIES CUMULATIVELY TO UNPAID COMMISSIONS IN THE AGGREGATE, NOT TO EACH UNPAID COMMISSION

■ Defendant's last argument is that the $257,493.00 Judgment entered by the Court in this matter is erroneous.

In arriving at the $257,493 Judgment amount, the Court applied the double damages provision [7] to double the two less–than–$50,000 commissions which the jury found the Defendant to have intentionally failed to pay (i.e., the Court doubled the $35,000 and $37,500 jury verdict on Counts 2 and 4 to award Plaintiff $70,000 and $75,000 on these two counts, respectively), and awarded $100,000 to Plaintiff on the third intentionally withheld commission in Count 3 (i.e., because doubling the $50,200 jury verdict on Count 3 would exceed $100,000, the Court applied the statutory $100,000 cap as to this count).

Defendant argues that the double commissions penalty provision, M.C.L. § 600.2961(5)(b) is intended to be applied to *all* intentionally withheld commissions in the aggregate, and when in the aggregate, the doubled intentionally withheld commissions exceed $100,000, the statutory cap kicks in. Thus, Defendant argues that the correct calculation of damages should be the total amount of commissions that the jury found to be owing to Plaintiff on each count (i.e., $12,493 + $ 35,000 + $50,200 + $37,500, for a total of $135,193). And, since, in the aggregate, doubling the intentionally withheld $35,000, $50,200 and $37,500 commissions would total in excess of $100,000, Plaintiff would be entitled to

---

7. The double damages provision is set forth in subsection (5)(b) of M.C.L. § 600.2961:

(5) A principal who fails to comply with this section is liable to the sales representative for both of the following:

(a) Actual damages caused by the failure to pay the commissions when due.

(b) If the principal is found to have intentionally failed to pay the commission when due, an amount equal to 2 times the amount of commissions due but not paid as required by this section or $100,000.00, whichever is less.

only an additional $100,000 penalty pursuant to section 2961(5)(b), not to the additional $122,300 reflected in the Judgment entered by the Court.

Plaintiff counters that that the cap applies separately to each unpaid commission, and, therefore, under subsection (5) of § 600.2961, it is entitled to recover on *each* of the three intentional-failure-to-pay commissions the jury verdict amount *plus* (as to each of these three commissions) either a doubled amount or $100,000, whichever is less. Thus, Plaintiff argues that the damages awarded in the Judgment for intentionally withheld commissions should be as follows:

Count 2—$35,000 *plus* $70,000 (double commissions penalty)

Count 3—$50,200 *plus* $100,000 (statutorily capped penalty)

Count 4—$37,500 *plus* $75,000 (double commissions penalty)

For a total damages award (including the $12,493 jury award on Count 1) of $380,193.

Having reviewed and considered this matter, the Court is persuaded that the Defendant is correct—the Judgment in this case should reflect an award of all of the actual damages assessed by the jury plus a single statutorily capped Section 2961(5)(b) award of $100,000.

As both parties acknowledge, no court has squarely addressed the issue of the proper application of Section 2961(5)(b)'s *double commissions provision* or its attendant $100,000 statutory cap, and, as with other provisions of this sloppily written, muddled statute, this section is certainly not a model of clarity and is open to too much interpretation. However, the Sixth Circuit has at least implicitly ruled on this issue and has concluded that the proper assessment of damages for intentional failure to pay commissions is an award of the actual damages sustained by the plaintiff plus a single double commissions penalty capped at $100,000.

In *Kingsley Associates, Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498 (6th Cir. 1995), the Sixth Circuit was presented with an appeal filed by a sales representative Court's contesting a number of the District Court's rulings on pre- and post-trial motions in a case involving the sales representative's claims of breach of contract and violation of Michigan's Sales Representative Statute arising out of the defendant's failure to pay commissions.

Prior to trial, on a motion for summary judgment, the District Court had declared the Michigan Sales Representative Statute unconstitutional, finding that the statute violated the title-object clause of the Michigan Constitution. The court, nonetheless, allowed the issue of "intentional failure to pay" to be tried to the jury along with the plaintiff's non-statutory breach of contract/unjust enrichment claims to obviate the need for a new trial should its finding on the statute's constitutionality be reversed on appeal. 65 F.3d at 501. The jury returned a verdict for the plaintiff on its breach of contract claim and further found the defendant's failure to pay commissions to be intentional. *Id.*

After trial, the defendant moved for Judgment as a Matter of Law and in the alternative, for New Trial. The District Court granted the Motion for Judgment as a Matter of Law and vacated the jury's determination of defendant's breach of contract and its finding that defendant intentionally failed to pay plaintiff the commissions due him. *Id.* The court also conditionally granted the defendant's Motion for New Trial on the breach of contract claim in the event that its holding was reversed on appeal. *Id.*

The Court of Appeals did, in fact, reverse the district court's ruling on the breach of contract claim and further found that the district court erred in conditionally granting a new trial. *Id.* at 506. Lastly, the Court of Appeals reversed the lower court's determination of unconstitutionality of the Sales Representative Statute. *Id.* at 508. The appellate court concluded its decision by stating the following:

As the jury has already made a finding that Moll Plasti Crafters intentionally failed to pay Kingsley its commissions due, *Kingsley is hereby awarded in addition to its actual damages **an amount** [singular] equal to twice the amount of commissions [plural] due but not paid, **not to exceed $100,000,** as well as rea*sonable attorneys' fees and costs in accordance with Michigan Compiled Laws § 600.2961.

For the reasons stated above, we hereby REVERSE the decision of the district court to grant Moll PlastiCrafters' Motion for Judgment as a Matter of Law. Likewise, the district court's decision to conditionally grant a new trial is hereby REVERSED, and the jury's verdict in favor of Kingsley is hereby reinstated. Furthermore, the district court's finding that Section 600.2961 is unconstitutional under the title-object clause of the Michigan Constitution is hereby REVERSED. *In addition to its actual damages, Kingsley is hereby awarded twice the amount of commissions [plural] due but not paid, **up to $100,000,** as well as reasonable attor*neys' fees and costs.

65 F.3d at 508 (emphasis added).

As indicated, the Sixth Circuit assessed *one single penalty* of double the amount of commissions due *up to $100,000* in addition to the actual damages sustained by the plaintiff. *See also, H.J. Tucker & Associates, Inc. v. Allied Chucker and Engineering Company,* 234 Mich.App. 550, 595 N.W.2d 176 (1999), in which the Michigan Court of Appeals stated that Section 2961 provides for an award of actual damages plus "an additional award of two times the amount of commissions due, not to exceed $100,000." 595 N.W.2d at 180.

This construction further appears to be consistent with the Michigan Legislature's apparent desire to enact a sales representative commissions statute that would "bring Michigan into line with most of its surrounding states, which reportedly have a similar law." [See Legislative Analysis of Senate Bill 717, Defendant's Ex. 6, p. 2.]

Kentucky, Wisconsin, Pennsylvania, Ohio and South Carolina all have statutes which, are perhaps a bit more artfully drafted that the Michigan statute, and these states' statutes make it clear that for "intentional failure to pay," a *single* maximum penalty *in addition to actual commissions due* is assessed. *See,* Ky.Rev.Stat. § 371.375 ("[a]ll amounts due the sales representative *plus* exemplary damages in an amount not to exceed two (2) times the amount of commissions due the sales representative"); Pa.Stat. 43 P.S. § 1475 ("[a]ll commissions due the sales representative *plus* exemplary damages in an amount not to exceed two times the commissions due the sales representative"); Wis.Stat. § 134.93("[a]ny principal that violates sub. (2) ... is liable to the independent sales representative for the amount of the commission due and for exemplary damages of not more than 200% of the amount of the commissions due"); S.C.Stat. § 39–65–30 ("all amounts due the sales representative *plus* punitive damages in an amount not to exceed three times the amount of commissions due"). *C.f.,* Ohio Rev.Code § 1335.11 ("exemplary damages in an amount not to exceed three times the amount of commissions owed to the sales representative").

Commentators have also interpreted the Michigan statute as calling for actual damages plus a single double commissions penalty. *See,* Larry J. Saylor and Frederick A. Acomb, *Michigan Sales Representative Statute,* 73 MICH.B.J. 208 (Feb.1994).

For all of these reasons, the Court will grant Defendant's Motion for Amendment of Judgment (and deny Plaintiff's Motion for Amendment of Judgment) on the amount of damages awarded to Plaintiff. The Judgment will be amended to reflect the total amount of commissions that the jury found to be owing to Plaintiff on each count (i.e., $12,493 + $35,000 + $50,200 + $37,500, for an actual damages total of $135,193) plus an additional $100,000 for intentional failure to pay commissions pur-

suant to M.C.L. § 600.2961(b)(5), for a total damage award of $235,193.00.

## D. *ATTORNEYS' FEES*

Plaintiff also asks for an amendment of the Judgment to provide for an award of attorneys fees.

Section 2961(6) provides

If a sales representative brings a cause of action pursuant to this section, the court shall award to the prevailing party reasonable attorney fees and court costs.

"Prevailing party" is defined in Section 2961(1)(c) as "a party who wins on all the allegations of the complaint or on all the responses to the complaint."

Defendant argues that Plaintiff does not meet the statutory definition of a "prevailing party" because it claims that Henes did not win on *all* the allegations of the Amended Complaint. Defendant's theory is that because the jury did not find that CBI intentionally withheld the $12,493 commissions due Plaintiff on the Draw Leasing stationary unit, Henes did not succeed on all of the allegations of the complaint. However, as Henes points out in its Brief, Plaintiff's Complaint contains only one allegation of intentional failure to pay, and that allegation does not specify that Section 2961 damages are being sought on *each* transaction mentioned in the Complaint. Paragraph 35 of Plaintiff's Amended Complaint alleges only

35. Defendant has intentionally failed to pay commissions within the time periods set by M.C.L. § 600.2961; M.S.A. § 27A.2961.

 Plaintiff Henes actually pleaded two separate theories of recovery in its Complaint. In Count I, Plaintiff alleged a common law claim of breach of contract based upon CBI's failure to pay Henes the agreed upon sales commissions relative to the Draw Leasing stationary unit and the unit sold to Suburban Recycling.[8] In

Count III Plaintiff alleged its claim of violation of the Michigan Sales Representative Statute.[9]

The Michigan Court of Appeals recently held that when a plaintiff pleads alternative theories of liability, the plaintiff need only prevail on one of them in order to be considered a "prevailing party" for purposes of Section 2961. *See H.J. Tucker & Associates, Inc. v. Allied Chucker and Engineering Company, supra,* 595 N.W.2d at 182. In that case, the plaintiff alleged theories of breach of contract, fraudulent misrepresentation, innocent misrepresentation, detrimental reliance, quantum meruit, unjust enrichment, breach of fiduciary duty and violation of M.C.L. § 600.2961. The Court of Appeals determined that because each theory sought to recover for the same injury, it was necessary for the plaintiff to prevail only on one theory to be considered a "prevailing party" for purposes of an award of statutory damages under Section 2961. The court stated that

Defendant's construction of the statute [M.C.L. § 600.2961] is too narrow and would defeat the purpose of M.C.R. 2.111(A)(2) to allow inconsistent claims or alternative theories to be pleaded for a single cause of action.

*Id.*

As indicated, Plaintiff sought to recover commissions for the Draw Leasing stationary unit under two theories—breach of contract and violation of Section 2961. Henes prevailed on one of these theories—breach of contract—with respect to this transaction, and with respect to the other three transactions, Plaintiff prevailed under the alternative Section 2961 theory. Pursuant to *Tucker,* Plaintiff should be considered a "prevailing party" for purposes of an award of attorneys' fees under the Sales Representative Statute.

---

8. These two sales were characterized in the Jury Verdict as Transactions (counts) 1 and 2.

9. Count II sought only a declaratory judgment of applicability of the procuring cause

doctrine to commissions on any sales Plaintiff may have procured during his tenure with CBI but which were not consummated until after the termination of Henes' employment.

Plaintiff seeks an award of attorneys' fees in the amount of $71,760.00. In support of this request, Plaintiff has submitted the verified, itemized affidavits of its attorneys, Randall Gillary and Kevin Albus. The Court has reviewed the affidavits of Messrs. Gillary and Albus and finds that all but 17.58 hours of Mr. Albus' time is compensable. These 17.58 hours billed by Mr. Albus are for matters this attorney handled for Plaintiff more than three to six months prior to the initiation of this action. Therefore, the Court will disallow the $2,637.00 billed for this time, and will award Plaintiff attorneys' fees in the amount of $69,123.00.

## E. *INTEREST*

Plaintiff seeks a further amendment of the Judgment to provide for an award of interest, and an award of attorneys' fees and costs. With respect to interest, Plaintiff contends that the Judgment should include provisions for pre-complaint interest, pre-judgment interest and post-judgment interest. Defendant CBI does not dispute Plaintiff's entitlement to pre-judgment interest from the date of Plaintiff's filing of the Complaint in this action, nor does CBI dispute Plaintiff's entitlement to post-judgment interest. Defendant does, however, dispute Plaintiff's claimed entitlement to pre-complaint interest.

In a diversity case, federal law governs the rate of post-judgment interest. *See Bailey v. Chattem, Inc.*, 838 F.2d 149 (6th Cir.1988), *cert. denied*, 486 U.S. 1059, 108 S.Ct. 2831, 100 L.Ed.2d 931 (1988); *Holland v. Earl G. Graves Publishing Co., Inc.*, 33 F.Supp.2d 581, 582 (E.D.Mich. 1998); 28 U.S.C. § 1961.[10] However, "questions of prejudgment interest in diversity actions are to be determined under state law." *Diggs v. Pepsi–Cola Metropol-*

*itan Bottling Co., Inc.*, 861 F.2d 914, 924 (6th Cir.1988); *Holland, supra.*

M.C.L. § 600.6013 provides that "[i]nterest shall be allowed on a money judgment recovered in a civil action," and governs the rate of interest to be applied after the filing of the complaint. The statute further provides, in pertinent part:

[F]or complaints filed on or after January 1, 1987, interest on a money judgment recovered in a civil action shall be calculated at 6–month intervals from the date of filing the complaint at a rate of interest that is equal to 1% plus the average interest rate paid at auctions of 5–year United States treasury notes during the 6 months immediately preceding July 1 and January 1, as certified by the state treasurer, and compounded annually, pursuant to this section. Interest under this subsection shall be calculated on the entire amount of the money judgment including attorney fees and other costs. However, the amount of interest attributable to that part of the money judgment from which attorney fees are paid shall be retained by the plaintiff, and not paid to the plaintiff's attorney.

M.C.L. § 600.6013(6).

With respect to interest potentially accruing *before* the filing of the Complaint, federal courts applying Michigan law have recognized that "generally, Michigan courts have included interest as an element of damages as a matter of right where the amount claimed is liquidated." *Holland v. Earl G. Graves Pub. Co., Inc., supra*, 33 F.Supp.2d at 583; *Jones v. Jackson Nat'l Life Ins. Co.*, 819 F.Supp. 1382, 1383 (W.D.Mich.1993) (citing *Banish v. City of Hamtramck*, 9 Mich.App. 381, 385, 157 N.W.2d 445 (1968)). A claim for dam-

---

**10.** 28 U.S.C. § 1961 provides, in pertinent part as follows:

(a) Interest shall be allowed on any money judgment in a civil case recovered in a district court.... Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the

Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment....

(b) Interest shall be computed daily to the date of payment ... and shall be compounded annually.

ages is defined as being "liquidated" where "the amount thereof is fixed, has been agreed upon, or is capable of ascertainment by mathematical computation or operation of law." *Holland, supra.* As the *Holland* court explained, in cases where the amount claimed is liquidated, "interest has generally been allowed from the date when the claim accrued or in other words, from the date compensation would have been due had it been paid voluntarily." 33 F.Supp.2d at 583, quoting *Jones v. Jackson Nat'l Life Ins. Co.*, 819 F.Supp. at 1383 (internal quotations omitted).

As indicated above, Defendant does not contest Plaintiff's entitlement to post-judgment interest or to post-complaint/prejudgment interest. Therefore, the Court will amend the Judgment to include (1) an award of interest calculated as provided in M.C.L. § 600.6013(6) from the date of filing the complaint, on June 2, 1998, until the date of Judgment, June 30, 1999, and (2) an award of interest on the Judgment at the rate provided in 28 U.S.C. § 1961.

 The only remaining issue then is the matter of pre-complaint interest. As indicated above, Michigan courts have held that pre-complaint interest is to be allowed as of right where the claim for damages is liquidated, i.e., where the amount is fixed, has been agreed upon or is capable of ascertainment by mathematical computation or operation of law. *See Holland v. Earl G. Graves Pub. Co., Inc., supra,* and cases cited therein. Although Michigan has not statutorily provided a rate of pre-complaint interest, Michigan courts have determined that the appropriate pre-filing rate of interest is 5% per annum. *See Feiler v. Midway Sales, Inc.,* 363 Mich. 105, 108, 108 N.W.2d 884 (1961); *Jones v. Jackson Nat'l Life Ins. Co., supra,* 819 F.Supp. at 1383 n. 1; *Holland, supra,* 33 F.Supp.2d at 584.

Plaintiff here seeks pre-complaint interest on, the commissions Henes was awarded in Counts 1 and 2. Defendant does not contest Plaintiff's right to an award of pre-complaint interest, outright, but rather contests only the date on which Plaintiff

contends the date on which compensation would have been due had it been voluntarily paid. Plaintiff Henes contends that its claim for the $12,493 commissions awarded by the jury in Count 1 would have been due on December 19, 1996, and that its claim for the $35,000 in Count 2 was due as of June 13, 1997. However, as Defendant points out, the evidence at trial does not support these contentions.

With respect to the $12,493 commission on the sale of the Draw Leasing Stationary Unit, the evidence presented at trial showed that the parties did not come to an agreement as to the rate or terms of commission until April 1997 [see Trial Ex. 41] and Defendant made a partial payment of commission due Plaintiff on June 24, 1997. [See Trial Ex. 16.] It was at that point that Defendant withheld the $12,493 balance of commission due on the sale contending that Henes would not be paid the rest of its commission until certain additional criteria were met. Plaintiff argued that the additional terms were met and the jury apparently agreed.

Given these facts, the Court finds that Plaintiff's claim for the $12,493 commission on the Draw Leasing Stationary Unit accrued on June 24, 1997. Thus, Plaintiff is entitled to pre-complaint interest at the rate of 5% per annum on this sum from that date until the date of filing the Complaint.

With respect to the $35,000 commission on the Suburban Recycling sale, the evidence at trial showed that this unit was not fully paid for until October 9, 1997 [see Trial Ex. 17]. Therefore, Plaintiff's claim for this commission did not accrue until that date. Accordingly, Plaintiff will be awarded 5% per annum pre-complaint interest on this $35,000 sum from October 9, 1997 until the date of filing the Complaint.

## CONCLUSION

For all of the reasons stated above in this Opinion and Order,

IT IS HEREBY ORDERED that Defendant's Motion for New Trial is denied.

IT IS FURTHER ORDERED that Defendant's Motion for Amendment of Judgment is granted, in part, and denied, in part.

IT IS FURTHER ORDERED that Plaintiff's Motion for Amendment of Judgment is granted, in part, and denied, in part.

IT IS FURTHER ORDERED that Plaintiff's Motion for Attorneys' Fees is granted, in part, and denied, in part.

IT IS FURTHER ORDERED that the Judgment in this matter shall be amended to reflect the following:

(1) The total amount of commissions that the jury found to be owing to Plaintiff on each count (i.e., $12,493 on Count 1 + $35,000 on Count 2 + $50,200 on Count 3 + $37,500 on Count 4, for an actual damages total of $135,193) plus an additional $100,000 for intentional failure to pay commissions pursuant to M.C.L. § 600.2961(b)(5), for a total damage award of $235,193.00; plus

(2) An award of attorneys' fees in the amount of $69,123.00; plus

(3) An award of pre-complaint interest at the rate of 5% per annum (a) on the $12,493 commission on the Draw Leasing Stationary Unit from June 24, 1997 until the date of filing the Complaint on June 2, 1998, and (b) on the $35,000 commission on the Suburban Recycling Mobile Unit, from October 9, 1997 until the date of filing the Complaint on June 2, 1998; plus

(4) An award of (a) post-complaint/pre-judgment interest calculated as provided in M.C.L. § 600.6013(6) from the date of filing the complaint, on June 2, 1998, until the date of Judgment, June 30, 1999, and (b) interest on the Judgment at the rate provided in 28 U.S.C. § 1961.

SO ORDERED.